*In re* MARRIAGE OF THOMAS A. JACKSON, Plaintiff-Appellee, and DOROTHY FAYE JACKSON, Defendant-Appellant.

Fifth District No. 5—87—0645

Opinion filed February 10, 1989.—Rehearing denied March 1, 1989.

William C. Evers III, of Collinsville, for appellant.

Melroy B. Hutnick, of Belleville, for appellee.

JUSTICE LEWIS delivered the opinion of the court:
Dorothy Faye Jackson (Dorothy), filed a petition in the circuit court of St. Clair County alleging that her former husband, Thomas

Jackson (Thomas), the plaintiff in the underlying divorce proceeding, was in arrears with regard to his child support payments for their two children. Thomas maintained that his reduction of his child support payments was proper because of three affirmative defenses, which were as follows: (1) that the parties had agreed at the time of the original divorce decree that child support should be $25 per week per child and that he was permitted to unilaterally reduce the child support upon his oldest child becoming emancipated; (2) that Dorothy should be estopped from seeking arrearage of the child support; and (3) that Dorothy's petition should be denied as she had "ratified" Thomas' reduction of the child support payments. Thomas also raised a counterclaim in which he sought a declaratory judgment from the court regarding the construction of the language of the parties' divorce decree. The circuit court dismissed Thomas' counterclaim and his affirmative defense that, at the time of the original divorce decree, the parties' had intended and had agreed that the amount of child support Thomas was to pay was to be $25 per week per child. Following a hearing, the circuit court denied Dorothy's petition, finding that she had "ratified the actions of the plaintiff in reducing the child support without leave of court." Dorothy appeals this order.

A divorce decree was entered on April 20, 1977, by the circuit court of St. Clair County dissolving the marriage of Thomas and Dorothy. In this decree, Dorothy was awarded custody of the parties' two children, Randy Bruce, age 13, and Ricky Wade, age eight. Additionally, the decree provided that child support for the two children was to be paid as follows:

"Second party (Dorothy) understands and agrees that she shall be awarded the sum of Fifty Dollars ($50.00) per week support for the parties' two minor children, said sum to be paid promptly to coincide with First Party's (Thomas) pay days."

On December 16, 1981, the parties' oldest son, Randy, reached the age of 18, and on or about June 1982, after Randy graduated from high school, Thomas unilaterally reduced his payments of child support from $50 per week to $25 per week. On February 19, 1987, Dorothy filed a post-decree petition contending that Thomas was delinquent in paying the child support ordered in the divorce decree.

At the hearing on the petition, Thomas testified that he was aware that the divorce decree provided that he was to pay $50 per week for child support and that there had never been a court order entered modifying the amount of child support. Thomas stated that in December 1981, he contacted his attorney, Norvan Adams, to ask if he could reduce his child support payments. According to Thomas,

Adams advised him to wait until Randy graduated from high school before he reduced the payments, which Thomas did. Thomas admitted that after talking to Adams, he did not contact Dorothy to discuss his child support, but that he included a note on his check of June 1982, indicating that he had discontinued paying child support for Randy, their emancipated child. Thomas had paid Dorothy $25 per week since that time.

Thomas stated that he currently had an income of $30,000 and that he and his current wife owned a 1985 Dodge Lancer. Thomas had recently deeded his interest in his home to his current wife; however, he participated in the mortgage payments and was liable on the mortgage of the home. It was stipulated that, at all times, Thomas had had the ability to pay the child support ordered by the divorce decree.

Dorothy Jackson (now Vogt) testified that it was Thomas' attorney, Norvan Adams, who had handled their divorce and who had authored the divorce decree. Dorothy corroborated that after Randy graduated high school, Thomas reduced his child support payments from $50 per week to $25 per week and that she understood why Thomas had done this. Thomas never called her or wrote to her about his reduction of the child support payments, and she had never contacted him regarding this matter. Dorothy stated that she had not filed a petition for delinquent support payments since 1982, until she filed this petition.

Dorothy believed that she should be receiving $50 per week as that was what the divorce decree stated. She admitted that Thomas had told her he could only afford to pay her $25 per week per child. Dorothy did not have any understanding as to the difference between $25 per week per child and $50 per week.

Norvan Adams, Thomas' attorney, testified that he had handled the divorce for Thomas. Adams recalled that towards the end of 1981, Thomas contacted him and discussed his child support payments. According to Adams, the substance of Thomas' call was that his oldest son would soon obtain majority and that $25 should be deducted from his child support payments. It was also determined that Thomas' child would graduate in the spring. Adams stated that he told Thomas that he could reduce his child support when Randy graduated from high school. Adams could not remember if he told Thomas that he needed to go to court, but he did recall telling Thomas that he should contact Dorothy and explain what he was trying to do.

In closing argument, Thomas argued that Dorothy should be estopped from receiving accrued child support as Thomas had changed his position and Dorothy had waited five years before seek-

ing arrearage. He also argued that Dorothy had "ratified" his actions. The circuit court found that Dorothy had ratified Thomas' actions without leave of court and denied Dorothy's petition to enforce the divorce decree.

On appeal, Dorothy contends that the circuit court erred when it determined that she "ratified" Thomas actions and denied her petition. Thomas counters Dorothy's contention by arguing that the circuit court exercised its judicial discretion when it determined that Dorothy had ratified his actions. Further, he states that because Dorothy knew that the child support was to be $25 per week per child at the time of the original divorce decree, because she understood that the reason Thomas reduced the child support in 1982 was because of the emancipation of their oldest child, and because she had actual knowledge and had acquiesced in the reduction of the child support by not filing a petition for arrearage for five years, that Dorothy had "ratified" the reduction of the child support.

●■■ We initially note that the law regarding the unilateral modification of a lump-sum periodic payment of child support is well established. Although section 510(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 510(c)) provides that a party's legal obligation to support a child ceases upon a child becoming emancipated, a divorce decree which orders a lump-sum periodic payment cannot be unilaterally modified by reducing the award *pro rata* upon a child's emancipation without leave of court. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12.) Such modification of child support payments is solely a judicial function, and it is the circuit court who must determine whether a reduction should be made *pro rata* or whether other equitable considerations require a different amount be paid. Automatic reduction of child support, such as here, infringes upon the discretionary powers of the circuit court to modify an award. (*Blisset v. Blisset* (1988), 123 Ill. 2d 161, 526 N.E.2d 125; *Finley*, 81 Ill. 2d 317, 410 N.E.2d 12.) Under the facts presented in the case *sub judice*, Thomas' *pro rata* unilateral reduction of the lump-sum periodic payments of $50 per week established by the divorce decree was improper under the law, and therefore, barring that any equitable doctrines were applicable, Dorothy's petition to enforce the decree should not have been denied, and the circuit court's ruling denying her petition under the circumstances presented here was error. However, our analysis of this case cannot end here.

Thomas raised a unique defense to Dorothy's petition when he asserted that she ratified his actions. There are no cases in Illinois where ratification has been held to foreclose a petitioner's right to a

vested and accrued right to child support.

Ratification, like *laches*, is a form of equitable estoppel. (*Schmitt v. Wright* (1943), 317 Ill. App. 384, 46 N.E.2d 184.) Ratification involves the express or implied adoption of the acts of another by one for whom the other assumes to be acting, even without authority; and the consequences are the same as if the acts ratified had been fully authorized in the beginning. Acquiescence by the person for whose benefit the act was performed will be held to constitute a ratification. (*Mateyka v. Schroeder* (1987), 152 Ill. App. 3d 854, 504 N.E.2d 1289; *Effingham State Bank v. Blades* (1985), 139 Ill. App. 3d 259, 487 N.E.2d 431.) At the heart of the doctrine of ratification is the concept that the person ratifying obtains a benefit, and that the benefit is obtained through the actions of a person that is acting in his behalf, *i.e.*, with apparent or implied authority. Generally, in cases involving ratification, there is usually found the existence of a principal and agent relationship. In the case at bar, we fail to see the benefit which accrued to Dorothy by Thomas' action of reducing her right to child support, and we cannot conclude that Thomas' actions were the result of apparent or implied authority or that there was a principal and agent relationship between Thomas and Dorothy. We find that the circuit court misapplied the legal concept of ratification and that it erred in denying Dorothy's petition.

Likewise, we do not find that the doctrine of equitable estoppel bars Dorothy's petition. An essential element of estoppel is that there is reliance by the person asserting estoppel. (*Finley*, 81 Ill. 2d 317, 410 N.E.2d 12.) Thomas did not reduce his child support payments because of any act or omission of Dorothy; rather, he did not comply with the provisions of the divorce decree because of his reliance on the advice of his attorney and because he believed he was no longer liable for the amount specified in the decree and that he could unilaterally reduce his payment. As Thomas did not rely on the acts and omissions of Dorothy, she was not equitably estopped from bringing her suit.

For the foregoing reasons, we reverse the judgment of the circuit court of St. Clair County denying Dorothy's petition to enforce the divorce decree and remand this cause to the circuit court for calculation of the amount of past-due child support owed Dorothy.

Reversed and remanded.

RARICK and CHAPMAN, JJ., concur.