BONNIE BAKER, Plaintiff-Appellee, v. STEVEN BAKER, Defendant-Appellant.

Fourth District No. 4—89—0113

Opinion filed January 11, 1990.

Walter L. Stodd, of Pontiac, for appellant.

Randell S. Morgan, of Kinate & Morgan, of Fairbury, for appellee.

JUSTICE LUND delivered the opinion of the court:

Plaintiff Bonnie Baker, n/k/a Bonnie Albert, and defendant Steven Baker were married on June 12, 1965. The marriage was dissolved on May 6, 1970. On March 17, 1988, Bonnie filed a petition for a rule to show cause and a motion for judgment against Steven alleging he was significantly in arrears in child support payments. Following a hearing, the circuit court of Livingston County entered judgment against Steven in the amount of $10,469. This represented a finding of past-due child support in the amount of $6,600, a penalty levied against Steven, pursuant to section 505(d) of the Illinois Marriage and Dissolu-

tion of Marriage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 505(d)), in the amount of $1,320, and an interest charge on the arrearage of $2,549. In addition, Steven was ordered to pay Bonnie's attorney fees. Steven appeals. We affirm.

The parties had two children from their marriage, Sandra, born September 5, 1965, and Daniel, born July 22, 1969. The original decree provided Bonnie would have physical custody of the children, subject to Steven's visitation rights. Steven was to provide child support payments to Bonnie for both children. Child support was originally set at $10 per week per child, or $20 per week. This amount took into consideration the fact that Steven was attending college at that time. In 1971, following a petition filed by Bonnie, the court increased the payments to $65 per child per month, or $130 per month. Bonnie again petitioned the court in 1974 for an increase, and Steven's payments were raised to $150 per month, or $75 per child per month. Both Bonnie and Steven remarried following the divorce. Steven moved to New York in the late 1970's and has resided there for all times pertinent to this appeal.

The dispute in this case centers around an informal change in custody arranged for Sandra during her high school years. An agreement was reached between Steven and Bonnie, whereby Sandra would live with Steven following Sandra's graduation from the eighth grade. The length of the stay was not determined beforehand. Steven alleges the agreement allowed him to cease paying any child support to Bonnie. In other words, Steven alleges the agreement was for Steven to support Sandra, and Bonnie to support Daniel. Bonnie denies any arrangement was made regarding child support. Bonnie alleges the agreement was for a transfer of custody only. Bonnie filed her petition for rule to show cause and motion for judgment, seeking payment of child support arrearages for both Sandra and Daniel. The trial court concluded Steven should not be held liable for unpaid child support for Sandra because he had made all required payments to Bonnie while Sandra lived with her. Equitable principles relieved Steven of any liability for payment while Sandra lived in New York with him. The court found Steven liable for arrearages representing unpaid child support for Daniel. The court found Steven's failure to pay support for Daniel unjustified, and entered judgment against Steven for the arrearage. Steven was also ordered to pay interest, attorney fees, and a penalty provided by statute. On appeal, Steven argues he should not be held liable for the arrearages based on the equitable doctrines of estoppel and *laches*. Steven also argues the failure to pay does not support a finding of contempt. Finally, Steven challenges the award of interest, attorney fees,

and the statutory penalty as an abuse of the trial court's discretion. Following is a summary of the testimony from the hearing.

Steven testified that he faithfully made his child support payments until 1979. In the spring of 1979, Bonnie contacted him and asked if he would allow Sandra to move into his household. Steven agreed. When Sandra moved to New York, he dropped his monthly payment to $75 from $150. He paid the reduced amount from July 1979 until February 1980. At that time, he discovered the reason Bonnie had suggested Sandra leave Illinois. Sandra had been sexually abused by her stepfather. Steven testified that when he found this out, he got so angry he did not send any further child support payments.

On May 18, 1980, he talked with Bonnie by telephone. Steven testified that in this conversation he confronted Bonnie with the information concerning the abuse to Sandra. Bonnie asked that Steven not bring the matter to court because she feared losing custody of Daniel also. Steven told Bonnie that he could not bear the financial burden of providing counseling for Sandra and also continue making child support payments for Daniel. According to Steven, he and Bonnie agreed that he would care for Sandra, and Bonnie would care for Daniel. Steven testified that over the next few years, he paid $6,735 for professional counseling for his daughter. This amount was an out-of-pocket expense as his medical insurance did not cover the costs of psychological services.

Steven acknowledged receiving letters from Bonnie in the years following 1980 which discussed child support. Steven received letters in January 1981, February 1981, and March 1982, which stated that he was behind in his child support payments and that he should send her the money. The amount of money requested in the letters reflected the payments due for Daniel. Steven stated that it seemed Bonnie was attempting to change her mind regarding the May 1980 agreement, but he had resolved to hold firmly to its terms. If she wanted to change the terms, he felt she could go to court to change the conditions of their agreement.

Sandra graduated from high school in 1983 and moved back to Illinois. Steven sent no further child support payments for Daniel even though Sandra became emancipated in 1983. Steven explained that he believed the agreement that each parent would care for one child was still in effect after Sandra graduated. Steven did state that he provided medical insurance for Daniel and paid any out-of-pocket costs Daniel incurred for medical care.

Steven testified to some financial difficulties during the years he lived in New York, including a period of unemployment. His tax re-

turns were admitted into evidence, and they showed his income for the years 1980 through 1987 to be as follows: 1980, $19,200; 1981, $21,247; 1982, $22,905; 1983, $26,330; 1984, $31,926; 1985, $38,564; 1986, $33,982; 1987, $32,875.

Sandra testified that she was sexually abused and that she underwent counseling for a period of 2½ years in order to deal with the resulting emotional and psychological wounds.

Bonnie testified that she initially contacted Steven in the spring of 1979 to arrange for Sandra to move to New York. The arrangement was open-ended. Sandra could move back any time she wanted. Bonnie stated she did not go to court to have the arrangement approved because she could not afford it. Also, she did not want to put the children in the position of having to choose between the parents as a result of the family strife.

Bonnie disagreed with Steven's version of the substance of the May 1980 telephone conversation. She testified that the conversation lasted only a few minutes. Steven told her that Sandra would need professional counseling, and Bonnie agreed that Steven should do whatever was best for her. According to Bonnie, there was no discussion about child support payments. She stated she did not agree at that time, or any time thereafter, to forego child support payments. She stated that her letters to Steven were for the purpose of reminding him of child support obligations. Bonnie stated her belief that Steven should still be responsible for the full $150 per month even after Sandra moved to New York to live with Steven. She acknowledged that her letters seemed to focus on the support owed for Daniel only. Bonnie was employed in various jobs during the years 1980 to 1987, but her income was never more than $6,000 per year.

Steven first argues the trial court should have found in his favor based on the principle of equitable estoppel. Based on the telephone conversation in May 1980, Steven argues Bonnie agreed to an arrangement, whereby Steven would support Sandra, and Bonnie would support Daniel. The trial court did take into account Bonnie's consent to a transfer of custody for Sandra. It relieved Steven of any liability for child support while Sandra was living in New York with Steven. Steven argues the court should have gone further and found Steven was not liable for unpaid support owing for Daniel. We disagree.

The law regarding modification of child support responsibilities was recently discussed in *Blisset v. Blisset* (1988), 123 Ill. 2d 161, 167-68, 526 N.E.2d 125, 127-28:

"The modification of a child support obligation is a judicial function, administered exclusively by the court as a matter of

discretion. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 329.) The court is obligated in marital dissolution proceedings to protect the best interests of the children involved. (See Ill. Rev. Stat. 1983, ch. 40, par. 602; see also Ill. Rev. Stat. 1983, ch. 40, par. 502.) Moreover, although property disposition agreements between spouses are binding upon the court, unless unconscionable, in marital dissolution proceedings, the court is not bound by agreements providing for the support, custody, and visitation of the children. (Ill. Rev. Stat. 1983, ch. 40, par. 502(b).) Allowing former spouses to modify a court-ordered child support obligation by creating a new agreement between themselves without judicial approval would circumvent judicial protection of the children's interests. Former spouses might agree to modify child support obligations, benefitting themselves while adversely affecting their children's best interests. Parents may not bargain away their children's interests. (See *Huckaby v. Huckaby* (1979), 75 Ill. App. 3d 195, 199; *Anthony v. Anthony* (Iowa 1973), 204 N.W.2d 829, 833.) It is for this reason, then, that parents may create an enforceable agreement for modification of child support only by petitioning the court for support modification and then establishing, to the satisfaction of the court, that an agreement reached between the parents is in accord with the best interests of the children. See *Finley v. Finley* (1980), 81 Ill. 2d 317, 329; *Hart v. Hart* (Mo. App. 1976), 539 S.W.2d 679."

Any agreement for modifying child support made solely between Steven and Bonnie was unenforceable as a matter of law.

 The court in *Blisset* also discussed the principle of equitable estoppel:

"A claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person. (*Dill v. Widman* (1952), 413 Ill. 448, 455-56.) The party asserting a claim of estoppel 'must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the true facts' (*Dill*, 413 Ill. at 456), and such reliance should be reasonable. *Rockford Life Insurance Co. v. Department of Revenue* (1986), 112 Ill. 2d 174, 185." (*Blisset*, 123 Ill. 2d at 169, 526 N.E.2d at 128.)

In the instant case, the trial court found that no agreement was actually made. Even if an agreement was made, the trial court concluded the agreement could not serve as the basis for equitable relief. We agree.

██ The trial court was justified in finding that no agreement was made. The only evidence of the agreement was Steven's testimony concerning the telephone conversation of May 18, 1980. Although Bonnie acknowledged that the transfer of Sandra's physical custody was made with her consent, she disputed the existence of any agreement concerning child support payments. Moreover, in the years following, Bonnie wrote letters to Steven stating that he had failed to make child support payments, and requesting that he make up the arrearages. The payments she requested in her letters were equivalent to what Steven should have paid for Daniel. That an agreement existed for the transfer of Sandra's custody is clear from the record. Under a theory of estoppel, Bonnie should not be able to collect child support for Sandra. However, the trial court could properly find that no agreement existed to discontinue child support payments for Daniel based on the facts of this case.

Further, Steven has not shown that his reliance was reasonable, or that it resulted in a detriment to him. In light of Bonnie's subsequent request for payment of back child support, it was not reasonable for Steven to believe that he had an agreement permitting him to forego his legal obligation. This is especially true in light of Steven's knowledge and experience in court concerning child support modification matters. Steven had been to court at least three times on the issue of child support. He was well aware of the importance of obtaining court approval of a modification of child support. Also, we are not convinced that Steven may claim that his sole support of Sandra constituted the type of detriment necessary to establish an equitable estoppel claim. Sandra's counseling was necessary, but this medical expense was one for which he was already obligated under the terms of the divorce decree. While the cause was the sexual abuse that occurred under Bonnie's roof, the cure was one for which Steven was obligated as Sandra's parent. The tragedy which occurred to Sandra resulted in the serious need for professional help. Sandra was fortunate in that her father was able to afford the necessary counseling. Nevertheless, this event cannot be used to excuse Steven's legal obligation to support Daniel. As the court noted, the support level for Daniel was not unreasonable in light of Steven's income.

The import of Steven's arguments is that he had an agreement and, if Bonnie was going to change it, she had the responsibility to go to court to do so. This is wrong. The rule in this State is that an enforceable agreement comes through the courts. If Steven wanted to modify the decree, it was his obligation to do so.

██ Steven also argues Bonnie's request for back child support

should be relieved under the equitable doctrine of *laches*. Steven argues Bonnie slept on her rights for eight years before filing the instant action to recover back child support. During this time, Steven argues he was harmed by the expense he incurred in providing Sandra with counseling and the other support which would normally have been Bonnie's responsibility. However, we note the issue of Sandra's child support was resolved in Steven's favor. As for Daniel's support, Steven was not relieved of this responsibility. Steven was put on notice through Bonnie's letters that she expected the child support for Daniel. Steven's acceptance of responsibility for Sandra did not relieve him of his responsibility for Daniel.

■ Steven next argues it was error for the court to find him in contempt. Steven argues the whole situation was brought about by Bonnie, and he should not be held in contempt for a situation which he did not cause. It was Bonnie who first contacted Steven and asked if he would be willing to take Sandra into his household. However, the trial court found Steven in contempt for his failure to pay for Daniel's support, and the failure to provide any justification for the nonpayment of this support. The trial court was correct. Steven had a legal obligation to support Daniel. The failure to comply with this obligation constitutes contempt for an order of the court. (Ill. Rev. Stat. 1987, ch. 40, par. 505(b).) The court rejected Steven's equitable claims, leaving him with an unjustified failure to pay child support. We again emphasize that Steven's actions, with respect to Sandra, were found to relieve him of his responsibility for her support. The obligation for which he is now called to account stems from his failure to pay Daniel's support.

■ Next, Steven argues the court should not have allowed Bonnie to receive interest on the child support owed. The allowance of interest is a matter which lies in the sound discretion of the trial court. The court's determination will not be reversed absent an abuse of discretion. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 332, 410 N.E.2d 12, 19.) The trial court determined that Steven should pay interest because his income levels for the period 1980 to 1987 indicated an ability to pay. The trial court found Steven's obligation of $75 per month for Daniel to be an inadequate sum in light of Steven's income. Also, Steven rests his case on the fact that he took Sandra into his household during her high school years. Following graduation in 1983, she returned to Illinois to live. Yet, Steven failed to pay any child support for Daniel even after Sandra became emancipated. We find the trial court's determination to impose interest was not an abuse of discretion.

■■ ■ Steven also objects to the award of attorney fees to Bonnie. The trial court found Steven was unjustified in failing to pay support for Daniel, and that Steven should be held responsible for the attorney fees and costs incurred by Bonnie. Section 508(b) of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 508(b)) permits the court to award attorney fees where a party has incurred the fees in attempting to enforce a court order and the failure to comply with the order was unjustified. The allowance of attorney fees rests within the discretion of the trial court, and will not be overturned absent an abuse of discretion. (*In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 1117, 421 N.E.2d 1308, 1315.) Bonnie's attorney was awarded $2,872 for 38.3 hours of work, along with costs of $117.45. The total award to Bonnie's attorney was $2,989.45. The requirements of the statute have been met. We find no abuse of discretion in this award.

■■ ■ Finally, Steven argues the court erred in imposing a one-time 20% penalty on the unpaid balance for child support, pursuant to statutory authority. Section 505(d) of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 505(d)) provides:

> "A one-time charge of 20% is imposable upon the amount of past-due child support owed on July 1, 1988 which has accrued under a support order entered by the court. The charge shall be imposed in accordance with the provisions of Section 10—21 of the Illinois Public Aid Code and shall be enforced by the court upon petition."

Steven argues the penalty was imposed improperly, as there is no evidence that Bonnie received public aid. Steven is correct. The penalty is to be applied according to the provisions of the Illinois Public Aid Code (Ill. Rev. Stat. 1987, ch. 23, par. 1—1 *et seq.*). The clear implication of section 10—21 of the Illinois Public Aid Code (Ill. Rev. Stat. 1987, ch. 23, par. 10—21) is that a person must be a public aid recipient before this one-time charge of 20% may be imposed. Because Bonnie was not a public aid recipient, the penalty was applied in error. We, therefore, reverse that portion of the order awarding a 20% penalty of $1,320.

For the reasons stated above, the order of the circuit court of Livingston County is reversed insofar as the award of a 20% penalty of $1,320. The remainder of the order is affirmed.

Affirmed in part; reversed in part.

SPITZ and STEIGMANN, JJ., concur.