*In re* MARRIAGE OF NANCY O. DUERR, Petitioner-Appellant, and GORDON JOHN DUERR, JR., Respondent-Appellee.

First District (4th Division)   No. 1—91—3295

Opinion filed July 29, 1993.

David I. Grund and Linda K. Schneider, both of Grund, Nadler & Mc-Nish, of Chicago, for appellant.

Diane M. Bruzas, of Chicago, for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Nancy Duerr appeals from an order of the circuit court denying a petition for rule to show cause that she brought against her ex-husband, Gordon Duerr, for allegedly failing to pay back child support in the amount of $18,900. The trial court found that Nancy was estopped from bringing her action. The circuit court also denied Nancy's request that Gordon contribute to the psychiatric and private education expenses of their oldest son, Jay, and pay for Nancy's attorney fees. The court ordered Nancy to contribute child support for the couple's youngest son, Bradley, and modified the amount of child support Gordon is obliged to pay Nancy.

The marriage of Nancy and Gordon Duerr came to a formal conclusion in Indiana on April 8, 1983. By court order, Nancy was awarded custody of the couple's children, Jay and Bradley. Gordon

was ordered to pay child support. In May of 1983 Nancy moved with the children to Cook County in Illinois. Thereafter, in August of 1987, the Illinois court increased Gordon's child support payments to $1,350 per month for both children.

In the spring of 1988, Gordon took Jay and Bradley on a trip to Florida. While on the trip Bradley expressed a desire to live with Gordon. After the Florida trip, the children returned to their residence in Illinois. Later, in May of 1988, both boys went to live with Gordon in Logansport, Indiana. In response to the children's move, Gordon purchased a new home for $125,000, adding $75,000 in improvements. Gordon also hired a nanny for the boys and purchased a car for the nanny. Nancy made no child support contributions to Gordon during the time the boys lived with him.

At trial, Gordon testified that after Jay and Bradley came to live with him, he ceased making child support payments to Nancy. Gordon testified that at the time he believed as a matter of "logic" that "since they were living with [him] that it was obvious to [him] that [he] didn't need to pay child support." Gordon also testified that in June of 1988, after the children moved in with him, Gordon sent Nancy 11 post-dated checks in the amount of $1,350 each. With the checks Gordon enclosed a note to Nancy explaining that he understood that having the children move out was a difficult transition for her. Gordon testified that he did not view the checks as child support payments, but rather as assistance to Nancy for her lease payments. In the note to her Gordon explained to Nancy that he recognized that she would not be able to adjust her living expenses immediately; however, he requested that whenever Nancy obtained a new lease she return any remaining checks to him. Gordon testified that in a subsequent conversation with her, Nancy told him she would do the best she could. Gordon admitted that he received no formal response from Nancy regarding the nature of the payments he forwarded to her. In explaining why he did not seek a court order formally changing the custody and support arrangements, Gordon referred to the August 1987 court order increasing his child support payments and testified that he did not feel like going through another protracted litigation. As of May 1989, Gordon provided no further payments to Nancy.

In her testimony, Nancy admitted receiving and cashing the 11 post-dated checks; however, she denied receiving any note of explanation from Gordon. Nancy denied that she and Gordon had had any discussion or agreement regarding the cessation of child support payments from him to her. Nancy testified that she did not ask Gordon

for any further payments after she cashed the last post-dated check of April 1989.

In June of 1990, the couple's oldest son, Jay, returned to live with Nancy in Chicago. Bradley remained with his father. Nancy enrolled Jay in a private school at an approximate cost of $8,000 per year. Nancy testified that Gordon signed a contract with the school and paid an $800 deposit; however, he refused to pay any further tuition. Nancy presented no evidence indicating a need for Jay to attend private school. Nor did she provide evidence corroborating her testimony regarding the expense she incurred in providing a private education for Jay. Nancy also obtained psychological counseling for Jay. She testified that when Jay returned from living with his father he was depressed, lethargic, and "nonparticipatory." Nancy stated that after several psychiatric counseling sessions, Jay's mental state greatly improved. Nancy did not provide independent documentation of Jay's therapy expenses. Neither of the counselors who treated Jay testified at trial.

Nancy's 1991 gross income to date of trial (approximately five months) was approximately $21,000 with monthly expenses of $12,000. Nancy did not provide documentation of her monthly expenses. In 1990, Nancy earned $75,000 selling realty for J.M.B. Realty, Inc. At the time of trial she was no longer employed by J.M.B. Gordon's gross monthly income for 1991 was $17,010, with expenses of $12,160. Gordon also receives bonuses from the corporations he has interests in.

On July 6, 1990, Nancy filed a petition for rule to show cause, alleging Gordon owed her child support arrearage in the amount of $18,900 for the period May 1989 to July 1990. Gordon responded to Nancy's charge with two affirmative defenses: subsequent agreement between the parties and equitable estoppel. The trial court found that the parties had agreed in May of 1988 that the two boys would go to live with their father. The court further determined that Gordon had suffered a detriment as a result of assuming full custody of the children. As a consequence, the trial court ruled that Nancy was estopped from bringing a petition for rule to show cause. On appeal, Nancy asserts that the requisite elements of equitable estoppel are not present in this case and, therefore, the trial court erred in denying her petition. We disagree.

■ The defense of equitable estoppel is available where a person's statement or conduct induces another to rely to his or her detriment on the statement or conduct. (*In re Marriage of Webber* (1989), 191 Ill. App. 3d 327, 547 N.E.2d 749.) The reliance should be reason-

able. (*Blisset v. Blisset* (1988), 123 Ill. 2d 161, 526 N.E.2d 125.) Within the context of the general rules applying to child support, the doctrine of equitable estoppel is an exception to the otherwise inflexible rule that child support payments become vested when they accrue. *Elliott v. Elliott* (1985), 137 Ill. App. 3d 277, 484 N.E.2d 482.

The Illinois courts have ruled that the equitable estoppel exception will generally be inapplicable where the respondent has unilaterally determined that the child's emancipation relieves the respondent of the obligation to pay child support. This is true despite the petitioner's silence, which the courts have viewed as not the kind of conduct that in itself creates an equitable estoppel. (See *In re Marriage of Jackson* (1989), 179 Ill. App. 3d 479, 534 N.E.2d 687; *Jones v. Meade* (1984), 126 Ill. App. 3d 897, 467 N.E.2d 657; *Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 390 N.E.2d 488.) Further, the supreme court of Illinois has determined that the petitioner is not equitably estopped from seeking child support arrearage, albeit the petitioner admittedly agreed to waive support in exchange for the respondent's relinquishment of visitation rights. (*Blisset v. Blisset* (1988), 123 Ill. 2d 161, 526 N.E.2d 125.) The court reasoned in part that the forfeiture of visitation rights and the failure to anticipate an action for unpaid support did not constitute the detriment required to establish an estoppel defense. (*Blisset*, 123 Ill. 2d at 169, 526 N.E.2d at 129.) The court also stated that as a general rule parties may not bargain away their children's support or visitation interests.

In contrast to the above-noted cases, the Illinois courts have tended to find that an informal change in custody preceding a cessation of child support payments lends credibility to an assertion of the defense of equitable estoppel. *Johnston v. Johnston* (1990), 196 Ill. App. 3d 101, 553 N.E.2d 93; *In re Marriage of Webber* (1989), 191 Ill. App. 3d 327, 547 N.E.2d 749; *Strum v. Strum* (1974), 22 Ill. App. 3d 147, 317 N.E.2d 59; also see discussion in *Baker v. Baker* (1990), 193 Ill. App. 3d 294, 549 N.E.2d 954. Contrast *Elliott v. Elliott* (1985), 137 Ill. App. 3d 277, 484 N.E.2d 482 (court found respondent improperly relied on petitioner's silence as agreement to reduce unallocated child support for one child out of four who went to live with respondent).

In these cases, as in the present one, whether the parties had agreed to the cessation or suspension of child support payments during the time the custody arrangement was altered was a matter in dispute. However, the fact that the respondent was in custody of the child and fully supporting him or her during the period in question provided evidence that the respondent was acting to his or her detri-

ment in reasonable reliance upon an agreement with the petitioner. Under these circumstances, the trier of fact could properly find the petitioner estopped from asserting an arrearage in child support. *Johnston v. Johnston* (1990), 196 Ill. App. 3d 101, 553 N.E.2d 93.

It is important to note that in these cases the child's support rights are not bargained away as the child is being supported by the obligor parent. Nor is visitation or any other of the child's best interests compromised. (See *Johnston v. Johnston* (1990), 196 Ill. App. 3d 101, 553 N.E.2d 93.) Further, under these circumstances, a finding of equitable estoppel precludes the petitioner from receiving an unwarranted benefit, the windfall of support payments for support she or he has not actually furnished. *Johnston v. Johnston* (1990), 196 Ill. App. 3d 101, 553 N.E.2d 93; also see *Hoos v. Hoos* (1980), 86 Ill. App. 3d 817, 823, 408 N.E.2d 752, 757.

In the present case, it is undisputed that the parties agreed that the children would live with Gordon after Bradley expressed the desire in the spring of 1988. It is undisputed that to support the children, Gordon purchased a new home and spent a considerable amount of money rehabilitating the house and providing a nanny for the children. It is undisputed that Nancy did not contribute to the support of the children while they lived with Gordon. It is also undisputed that Nancy continued to receive 11 months' worth of payments in the amount of $1,350. Gordon asserts the payments were for rent. Nancy does not dispute that she was obligated to her lease for the 11-month period. Nancy did not assert to Gordon until more than a year after she cashed the last of the checks that she had expected child support to continue during the time both boys resided with Gordon.

■ A finding that the doctrine of equitable estoppel applies as a defense must be based on clear and convincing evidence and will not be overturned absent an abuse of discretion by the trial court. (*Elliott v. Elliott* (1985), 137 Ill. App. 3d 277, 484 N.E.2d 482.) Under the circumstances of the present case, we do not believe the court abused its discretion in finding that Gordon ceased to pay child support to Nancy in reasonable reliance to his detriment on Nancy's conduct. Nancy is therefore estopped from seeking from Gordon child support arrearage for the period of time during which Gordon actually and solely provided home and support for the children.

In her next argument on appeal, Nancy contends that the court erred when, in response to Gordon's petition, it ordered her to pay Gordon $350 per month for the support of Bradley and reduced Gordon's child support payments to her to $1,000 per month. At trial, Nancy stipulated that the custody of Bradley be awarded to Gordon.

Nancy argues that Gordon has not shown a substantial change in circumstances that warrants a modification of his child support obligations. (Ill. Rev. Stat. 1991, ch. 40, par. 510(a).) Further, Nancy asserts that because of the disparity between her and Gordon's income, any reduction in Gordon's support obligation and imposition of an obligation on her serves to reduce the standard of living Jay would have enjoyed inside the marriage and perpetuates a disparity in the lifestyles of the two boys. Finally, Nancy contends that the court improperly ordered that the modification in Gordon's payments be retroactive to July 1, 1990, and that Nancy's support obligation be retroactive to August 9, 1990. Although Gordon filed his original petition on August 9, 1990, it was later dismissed. Gordon filed an amended petition on February 21, 1991, the date from which, according to Nancy, any modifications in the child support arrangements must begin.

■■ ■ We do not believe the trial court abused its discretion or ruled against the manifest weight of the evidence with respect to the child support arrangements in this case. As the custody of Bradley changed from Nancy to Gordon, the threshold question of a substantial change in circumstances has been met. (*In re Marriage of White* (1990), 204 Ill. App. 3d 579, 561 N.E.2d 1387.) Moreover, both parents have an obligation to financially support their children. (*In re Marriage of Schuster* (1992), 224 Ill. App. 3d 958, 975, 586 N.E.2d 1345; *In re Marriage of Fazioli* (1990), 202 Ill. App. 3d 245, 559 N.E.2d 835.) The Illinois Marriage and Dissolution of Marriage Act provides as a guideline that the noncustodial parent pay approximately 25% of his or her net monthly income in child support when there are two children. (Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(1).) When custody is split, the court may apportion the percentage between the parents. *In re Marriage of Flemming* (1986), 143 Ill. App. 3d 592, 493 N.E.2d 666.

Although the evidence at trial supports Nancy's assertion that Gordon's income is more than hers, we believe that based on the evidence presented, the trial court remained well within the statutory guidelines in determining that Nancy could provide a portion of Bradley's support. (See *In re Marriage of Keown* (1992), 225 Ill. App. 3d 808, 587 N.E.2d 644.) Further, we find nothing in the record to support Nancy's assertion that the amount of support Gordon is to pay for Jay results in a standard of living less than that Jay would have enjoyed in the marriage. Although we have some indication of Gordon and Bradley's living conditions, Nancy has not shown that her and Jay's standard of living is beneath theirs. To the contrary, Nancy tes-

tified that she has managed to provide private education and therapeutic counseling for Jay.

We also do not believe that the trial court erred in ruling the modified child support obligations retroactive. The fact that Gordon's petition was originally dismissed is not controlling as Gordon later filed an amended petition with leave of the court which related back to his original petition. (See *Wolf v. Meister-Neiberg, Inc.* (1991), 143 Ill. 2d 44, 570 N.E.2d 327 (amended complaint filed after expiration of statute of limitations related back to original timely filed complaint); also see *Kawa v. Harnischfeger Corp.* (1990), 204 Ill. App. 3d 206, 561 N.E.2d 1179 (where a party granted leave to file amended complaint, cause is still pending and undecided).) Therefore, the date of due notice to Nancy with respect to Gordon's petition is the date of his original filing. The court could properly modify the support award for any installments accruing from the date of due notice. Ill. Rev. Stat. 1989, ch. 40, par. 510(a); see *Shoff v. Shoff* (1989), 179 Ill. App. 3d 178, 534 N.E.2d 462.

■ Nancy also argues on appeal that the trial court erroneously denied her request that Gordon contribute to the private educational and therapeutic expenses incurred on behalf of Jay. Nancy failed to produce specific evidence of the reasonable necessity of providing private education for Jay or her actual expenditures. (See Ill. Rev. Stat. 1989, ch. 40, par. 505(a); *In re Marriage of Loffredi* (1992), 232 Ill. App. 3d 709, 597 N.E.2d 907.) The record is also devoid of any testimony other than Nancy's indicating psychotherapy was in Jay's best interests or necessary to his well-being. For these reasons, we do not believe the trial court's denial of Nancy's petition was improper.

■ Finally, Nancy argues that the trial court abused its discretion in denying Nancy a hearing to determine whether Gordon should pay any or all of Nancy's attorney fees. We do not believe the court abused its discretion in this respect. Because Gordon's failure to make support payments during the time the boys lived with him was not without justification, Nancy is not entitled to attorney fees under section 508(b) of the Illinois Marriage and Dissolution of Marriage Act. Ill. Rev. Stat. 1989, ch. 40, par. 508(b).

Further, as the trial court had heard evidence of the parties' financial situation during trial, it was not error for the court to fail to hold a separate hearing on the subject of fees. The Illinois Marriage and Dissolution of Marriage Act merely requires the court to consider the financial resources of the parties in coming to a conclusion about attorney fees. (Ill. Rev. Stat. 1989, ch. 40, par. 508(a); *In re Marriage of Drummond* (1987), 156 Ill. App. 3d 672, 509 N.E.2d 707.) The al-

lowance of attorney fees is within the discretion of the trial court and its determination will not be disturbed absent an abuse of discretion. (*In re Marriage of Drummond* (1987), 156 Ill. App. 3d 672, 509 N.E.2d 707.) In the present case, we believe that the trial court, considering the financial resources and other circumstances of the parties, could properly find it unnecessary for Gordon to pay Nancy's attorney fees. *Jones v. Meade* (1984), 126 Ill. App. 3d 897, 467 N.E.2d 657.

The judgment of the trial court is affirmed.

Affirmed.

JOHNSON and CAHILL, JJ., concur.