Rule 23 order filed
March 22, 2018;
Motion to publish granted
April 24, 2018.

2018 IL App (5th) 170164

NO. 5-17-0164

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| CORTNIE M. HODGES, | ) | Clinton County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 04-D-4 |
| | ) | |
| TODD HODGES, | ) | Honorable |
| | ) | William J. Becker, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Justices Welch and Moore concurred in the judgment and opinion.

**OPINION**

¶ 1     Petitioner, Cortnie M. Hodges, appeals from an order of the circuit court of Clinton County that reduced the child support arrearage of her ex-husband, respondent, Todd Hodges, on the basis of equitable estoppel. The issue on appeal is whether the trial court erred in applying the principles of equitable estoppel to the facts and circumstances of this case. We affirm.

¶ 2     In this appeal, respondent filed a motion to strike petitioner's brief. While we agree that petitioner failed to include some pertinent facts, we deny the motion to strike.

¶ 3                                 BACKGROUND

¶ 4     The parties married on July 22, 1995. Two children were born during the marriage, a son born on January 16, 1996, and a daughter born on September 5, 1998. Petitioner filed a petition

1

for dissolution on January 26, 2004. A marital settlement agreement was filed with the trial court and was incorporated into the judgment for dissolution entered on September 28, 2004. The parties agreed respondent would pay petitioner $788 per month in child support.

¶ 5 On August 23, 2006, the Illinois Department of Healthcare and Family Services (Department) notified the circuit clerk that it was providing child support enforcement services in conjunction with this case. On August 27, 2006, the Department filed a petition to intervene, which was granted. The Department, through an assistant attorney general, filed a petition for adjudication of indirect civil contempt, alleging that respondent was in arrears in the amount of $9483.60, of which $744.36 was interest as of September 30, 2006.

¶ 6 A hearing on the petition was scheduled for November 15, 2006. Both parties appeared and discussions ensued. The parties disagree as to what transpired; however, the record is clear that the assistant attorney general drafted a uniform order of support, which showed an arrearage of $8400 as of that date. The child support payment is filled in as $330 and payment on the arrearage was set at $50. It stated that both payments were to be made every other week beginning December 1, 2006. The order was never entered. The only order entered on that date was an order stating, "Based on [petitioner] opting out of the IV-D program and at her request, the Rule to Show Cause filed herein on Oct. 27, 2006 is hereby dismissed." Petitioner signed a letter on Department letterhead in which she stated that she no longer wanted the Department "to collect and enforce the payment of child support."

¶ 7 In December 2006, petitioner's private attorney filed a "Memorandum of Lien" against real estate owned by respondent, which stated, "That there is due and owing under the Order the sum of $10,446.00 to petitioner ***." However, no court ever made a finding of arrearage and no order was entered to that effect. Respondent learned of the lien in 2008, when he was applying

2

for a home equity loan. Respondent increased the amount of his loan by $10,446 to release the lien. On August 7, 2008, petitioner signed a release of lien. The release was recorded on August 11, 2008.

¶ 8 Sometime in 2008, petitioner admits she verbally agreed to accept respondent's payment of $165 per week in child support rather than the $788 per month originally ordered. According to petitioner, she made the concession only so respondent could catch up on his arrearage. In 2010, petitioner hand wrote a letter to respondent and included spreadsheets showing her accounting of respondent's child support payments made directly to her in 2007, 2008, 2009, and 2010. The spreadsheets indicate weekly payments of $165 per week by respondent to petitioner. The spreadsheets further indicate that there were times when respondent fell behind, but he would eventually catch up. Petitioner admitted she generated the accounting sheets.

¶ 9 In August of 2014, petitioner once again contacted the Department for help in collecting child support payments from respondent. Soon thereafter, the Department notified respondent he was approximately $22,000 or $23,000 behind in payments. Respondent denied that he owed that much and set about trying to disprove that he was in arrears by that amount by submitting a list of his payments, including dates, check numbers, and the amount of each check. In early 2015, the Department seized respondent's 2014 tax returns, and on July 7, 2015, the Department notified respondent that there was a lien on his home to enforce $17,583.11 in alleged past due child support and interest. Respondent appealed.

¶ 10 On July 17, 2015, respondent sent a letter and images of child support checks he sent to petitioner to the Department. Respondent later requested a hearing on the alleged balance in the case. The Department scheduled a hearing for November 4, 2015. A Department employee sent an e-mail to the administrative law judge handling the matter in which the employee explained

3

that in response to respondent's appeal of the lien issue, the Department was preparing a petition to determine arrears in order to refer the case back to court. The employee believed it would be prudent to get a judicial determination as to what the balance actually was and asked the administrative law judge continue the appeal.

¶ 11 A petition to determine arrears was never filed. A new administrative hearing date was set for January 12, 2016, at which time respondent and his nonattorney representative appeared. A hearing was conducted, after which the Department informed respondent it was unable to enforce any other order than the original written order, which provided that respondent pay child support in the amount of $788 per month. The administrative law judge noted that respondent presented equitable arguments as to why he should not owe the amount the Department said he owed, but declined to answer those arguments. On February 17, 2016, the administrative law judge delivered his "final" decision upholding a past due balance of $17,896.90 as of September 30, 2015.

¶ 12 On March 23, 2016, respondent filed a petition for review of the Department's intervention for child support and a request for judicial review. On April 21, 2016, the Department filed a motion to dismiss on the basis that the court lacked jurisdiction to review the Department's "final" administrative decision in part because respondent failed to file a complaint and issue a summons within 35 days from the date of the decision. Petitioner also filed a motion to dismiss.

¶ 13 Respondent then filed an amended petition to determine the arrearage under section 511 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/511 (West 2014)). Respondent's five-count petition alleged *inter alia*: (1) the child support agreement was modified in 2006, (2) enforcement of the original order was precluded by equitable estoppel and *laches*,

4

and (3) there can be no child support arrearages prior to the lien release on August 7, 2008. In response, the Department, on behalf of petitioner, asked the circuit court to dismiss the petition. In the motion, the Department claimed respondent's petition was actually a complaint under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)), and because respondent did not serve a summons, the circuit court was without jurisdiction. Petitioner later filed her own motion to dismiss and a petition to hold respondent in contempt for his willful failure to make child support payments under the court's order. Hearings were held on September 15, 2016, and November 29, 2016, during which several rulings were made from the bench. On December 21, 2016, the circuit court dismissed four of the five counts, leaving only the count dealing with the equitable estoppel and *laches*.

¶ 14     On January 19, 2017, respondent filed a second amended petition for determination of past due child support in which he requested petitioner be stopped from pursuing collection of past due child support. Petitioner filed a motion to strike. The circuit court dismissed the second amended petition and proceeded on count II of the first amended petition. On April 18, 2017, a hearing was held on count II, during which both parties testified.

¶ 15     Ultimately, the trial court found petitioner's explanations about why she accepted $165 per week confusing and determined that (1) equitable estoppel should apply to payments made from December 1, 2006, to September 30, 2014, in that the amount of support during that time should be $165 per week, or $715 per month; (2) respondent should pay child support in the amount of $788 per month from October 1, 2014, until May 31, 2017; and (3) the arrearage as of March 31, 2017, is $5770.79, which includes the statutory 9% interest on any amount not paid when due. Petitioner now appeals from that order. We note that respondent's child support obligation ended in May 2017, after the parties' youngest child graduated from high school.

¶ 16                                    ANALYSIS

¶ 17    The issue on appeal is whether the trial court erred in applying the principles of equitable estoppel to the facts and circumstances of this case. Petitioner argues equitable estoppel does not apply here. We disagree.

¶ 18    Equitable estoppel exists where a party, by his or her own statements or conduct, induces a second party to rely, to his or her detriment, on the statements or conduct of the first party. *In re Marriage of Smith*, 347 Ill. App. 3d 395, 399 (2004). The party who asserts estoppel must have relied upon the other party's acts or representations and not have any knowledge or convenient means of knowing the facts, and such reliance must have been reasonable. *Id*. A finding that equitable estoppel applies must be based upon clear and convincing evidence and will not be reversed unless the trial court abused its discretion. *In re Marriage of Duerr*, 250 Ill. App. 3d 232, 237 (1993).

¶ 19    Petitioner argues vehemently that because respondent failed to file a motion to modify and did not obtain judicial approval to reduce his child support obligation, any out-of-court agreement entered into between the parties cannot be enforceable. We agree with petitioner that the general rule is that courts have the exclusive authority to modify child support and are not bound by the parties' agreements concerning child support. *Blisset v. Blisset*, 123 Ill. 2d 161, 167 (1988). In *Blisset*, our supreme court held an agreement to waive child support in exchange for a waiver of visitation rights was not enforceable because the parties did not seek court approval of their agreement. See *id.* at 168. In this case, there was no waiver of child support in exchange for a waiver of visitation rights. There is an agreed order that received judicial approval at least from respondent's perspective.

¶ 20    The Department became involved in the parties' case in 2006 when petitioner sought its child support enforcement services. The Department filed a petition to intervene and an assistant attorney general filed a petition for adjudication for indirect civil contempt, alleging respondent was in arrears. A hearing was held at the Clinton County courthouse where the parties discussed the arrearage. Petitioner was also interested in pursuing an increase in child support. Respondent brought along documentation of his current income and, according to respondent, after reviewing the documents, the assistant attorney general handling the matter gave her opinion that respondent's child support obligation should actually be reduced based on his current pay.

¶ 21    The assistant attorney general drafted a uniform order of support, showing an alleged arrearage of $8400 as of November 15, 2006, and a notation stating petitioner was waiving interest. The child support payment line was filled in with the number $330, along with an arrearage payment of $50, and stated that both payments were to be paid every other week beginning on December 1, 2006. The parties disagree with how the meeting ended, but respondent testified the assistant attorney general told him and petitioner they could leave and she would get the order signed by the judge.

¶ 22    Petitioner insists the trial court improperly considered and admitted hearsay evidence of statements made by the assistant attorney general. Petitioner asserts that all of these statements should be stricken, and without the statements of the assistant attorney general, respondent has no statements upon which he can rely to show that his child support obligation decreased, making equitable estoppel inapplicable. In support of her argument, petitioner cites *People v. McDaniel*, 164 Ill. 2d 173 (1995). But even petitioner admits that *McDaniel* is distinguishable from the instant case because the setting for which the out-of-court statements were made was in

the context of a criminal case whereas this case involves child support enforcement. Thus, *McDaniel* is not controlling here.

¶ 23    The law is clear that any out-of-court statement offered to prove the truth of the matter asserted therein is hearsay and inadmissible. *People v. Szudy*, 262 Ill. App. 3d 695, 711 (1994). Nevertheless, an out-of-court statement offered to prove its effect on the listener's mind or to show why the listener later acted as he or she did is not hearsay and is admissible. *Id.* Here, the assistant attorney general's statements were not inadmissible hearsay because they were not offered to prove the truth of the matter asserted, but to explain why respondent acted as he did in making payments of $165 per week. The statements were relevant to show what respondent believed occurred at the November 15, 2006, hearing. Accordingly, we find no error in the admission of statements made by the assistant attorney general.

¶ 24    And even though the uniform order of support drafted by the assistant attorney general at the November 15, 2006, hearing was never entered, there is no doubt that both parties relied upon it. For example, petitioner used the negotiations that took place that day to collect an arrearage that was never adjudicated. Petitioner specifically testified she used the $8400 arrearage calculated for the draft uniform support order in filing a lien against respondent's real estate. Petitioner's attorney added interest, plus an additional month of child support to that amount in arriving at the lien amount. Respondent satisfied the lien by obtaining a home equity loan in August of 2008 and paid a lump sum of $10,446.

¶ 25    After the lien was released, petitioner continued to accept $165 per week as provided for in the uniform draft order ($330 biweekly equals $165 per week). Petitioner's spreadsheets, dating back to 2007, are clear and convincing evidence of the fact that the parties reached an agreement whereby respondent would pay $165 per week in child support rather than $788 per

8

month. Respondent submitted cancelled checks showing he wrote 138 checks directly to petitioner for child support between January 2008 and December 2013. One hundred thirty-four of those 138 checks were in an amount of $165 or a multiple thereof.

¶ 26    Petitioner wrote respondent a letter in which she specifically discussed respondent's child support payments during 2008, 2009, and 2010, stating as follows:

> "Thank you for giving me checks to help catch up the child support agreement. I updated my report w/ your checks to see where that put you and here is what I have. A few more checks for 08 & 09 are due to catch up. Please let me know how this compares to your list. As you can see in 09 and 10, I am no longer asking for medical support. 09 medical was $300 your cost. I'll ask for it again if it becomes too much for me. I show 8 checks are due for 08 & 09 to catch up. I do not expect it all at once. I don't want you to fall behind again, but please let me know what you are able to do to catch up. Thank you again for making this happen. Call me w/ questions."

This letter in particular shows that both parties were relying on the agreement they reached on November 15, 2006. Petitioner did not attempt to collect any more than the $165 per week until she once again contacted the Department in August 2014 to intervene on her behalf.

¶ 27    In reliance on petitioner's acquiescence and acceptance of $165 per week, respondent took no further action to obtain a modification of his child support obligation, believing the modification had already been approved by the court on November 15, 2006. By accepting respondent's payment of $165 per week, petitioner induced respondent to rely, to his detriment, on the assumption that he was satisfying his child support obligation. It is not practical to say that a person is not damaged when after relying on an agreement with his former spouse he uses money that would otherwise be applied to court-ordered support to pay for other obligations only

9

to learn years later that his reliance on the agreement was misplaced. See *Blisset*, 123 Ill. 2d at 175 (Ryan, J., concurring in part and dissenting in part). This is especially true here where respondent was forced to increase his home equity loan by almost $10,500 in order to satisfy the lien placed on his home by petitioner's private attorney in 2006.

¶ 28    That it was necessary for respondent to increase his home equity loan by that amount indicates the difficulty respondent would have in raising an additional lump sum payment. And even though the difference between the original $788 per month and the agreed upon payment of $165 per week ($715 per month) is not huge, a 9% interest payment would amount to over an additional $5000 due and owing. Thus, we find that respondent has sufficiently shown that he reasonably relied to his detriment on the parties' November 15, 2006, agreement.

¶ 29    Petitioner also argues that the trial court did not make specific findings of each element necessary to apply the principle of equitable estoppel. However, it is not necessary for a trial court to make specific findings of fact, and its failure to do so is not grounds for reversal. *Nemeth v. Banhalmi*, 125 Ill. App. 3d 938, 959 (1984). The issue is not whether the circuit court made a specific finding, but whether its final determination is supported by the evidence in the record. *Id.* All the elements of estoppel are met here.

¶ 30                                    CONCLUSION

¶ 31    Petitioner induced respondent to rely to his detriment on an agreement to reduce child support to $165 per week. Respondent's reliance on the agreement was reasonable. There was no reason for respondent to question the agreement since it was reached at the courthouse on November 15, 2006, and all legal action against him ceased after that date. Respondent even paid a lien against his home in full based upon the November 15, 2006, agreement. Under these circumstances, we cannot say the trial court erred in finding petitioner equitably estopped from

10

collecting delinquent support payments from respondent from the date of her verbal agreement with respondent until she initiated these enforcement proceedings in 2014.

¶ 32    For the foregoing reasons, we affirm the order of the circuit court of Clinton County in its entirety.


¶ 33    Affirmed.

2018 IL App (5th) 170164
NO. 5-17-0164
IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| CORTNIE M. HODGES, | ) | Clinton County. |
| | ) | |
|     Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 04-D-4 |
| | ) | |
| TODD HODGES, | ) | Honorable |
| | ) | William J. Becker, |
|     Respondent-Appellee. | ) | Judge, presiding. |

_____

**Rule 23 Order Filed:**    March 22, 2018
**Motion to Publish Granted:**    April 24, 2018
**Opinion Filed:**    April 24, 2018

_____

**Justices:**    Honorable Richard P. Goldenhersh, J.

    Honorable Thomas M. Welch, J., and
    Honorable James R. Moore, J.,
    Concur

_____

**Attorneys**    Douglas C. Gruenke, J.D. Brandmeyer, Bruckert, Gruenke & Long, P.C.,
**for**    201 East Hanover Street, New Baden, IL 62265
**Appellant**

_____

**Attorney**    Timothy T. Raw, Barkau & Unverfehrt, P.C., 239 East St. Louis Street,
**for**    P.O. Box 244, Nashville, IL 62263-1702
**Appellee**

_____

**Intervenor-**    Ann C. Maskaleris, Assistant Attorney General, Office of the Illinois
**Petitioner**    Attorney General, 100 W. Randolph Street, 12th Floor, Chicago, IL 60601

_____