(No. 52446.—

ETHEL FINLEY, Appellee, v. BILL FINLEY, Appellant.

*Opinion filed May 30, 1980.—Rehearing denied September 26, 1980.*

David J. Letvin, of Cohn, Carr, Korein, Kunin, Schlichter & Brennan, of East St. Louis, and Richard A. Cary, of Wham & Wham, of Centralia, for appellant.

David L. Sauer, of Lackey & Lackey, of Centralia, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

The primary question presented by this appeal is

whether a parent who has been ordered by a divorce decree to pay a collective or lump sum weekly for the support of four minor children may unilaterally reduce the amount of such payments *pro rata* as each child is emancipated. The resolution of this issue also involves the construction of section 510(c) of the recently enacted Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 510(c)).

On October 4, 1965, a decree was entered in the Marion County circuit court dissolving the marriage of Ethel (plaintiff) and Bill (defendant) Finley. The decree provided, *inter alia,* that plaintiff be granted custody of their four children: Billy Irvin, age 16; Glenda Darlene, age 12; Terry Lee, age 7; and Patty Jean, age 4. The decree further provided as follows:

> "That the defendant shall pay to the Clerk of this Court who in turn shall pay the plaintiff herein for the use, support and maintainance of said minor children the sum of Thirty ($30.00) Dollars per week, said payments to start on Friday, October 8, 1965, and continue until further order of this Court."

Defendant complied with the decree during the year 1965, paying $30 each week to the clerk of the court. When his older son, Billy Irvin, entered the Army in 1966, defendant decreased the support payments by one-fourth. He enclosed a note of explanation to the circuit clerk with the reduced payment of $22.50. Approximately 4 years later, the older daughter, Glenda Darlene, was married and defendant again unilaterally reduced the amount of child support to $15. He sent another note to the clerk of the circuit court explaining the second reduction. On October 31, 1975, the younger son, Terry Lee, became 18 and another *pro rata* reduction of $7.50 was made, although Terry Lee remained at home for a period of time thereafter. A note of explanation of the reduction was forwarded to the circuit clerk with the $7.50 weekly payment for the support of Patty Jean, the parties' only remaining

minor child.

On December 8, 1977, subsequent to the emancipation of three of the four children, plaintiff filed a petition seeking child-support arrearage, interest on the arrearage, and an award of attorney's fees. Much of the wife's testimony at the hearing was directed toward negating an anticipated *laches* defense. She stated that, although she sought the advice of various attorneys several times concerning the unilateral *pro rata* child-support reductions, she was led to believe that there was nothing she could do regarding the payments. She stated that it was not until November 1976 that she learned that the previous legal advice that she had received was incorrect. She also was called to testify as an adverse witness pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60). She stated that she had confronted her former husband about the voluntary reductions on only one occasion. That conversation took place approximately 2 years prior to the date of the hearing on the petition for arrearage. The evidence further established that there were only one or two occasions where the support payments, albeit reduced, were tardy. On one of these occasions defendant had been hospitalized for burn injuries.

The trial court ruled that a spouse could not reduce the amount of support to be paid without leave of court. The court specifically found there to be no *laches* which would bar the claim and that the wife was not equitably estopped since the husband did not change his position in reliance on anything the wife did. Accordingly, on April 20, 1978, the court entered judgment for $10,713.75. The amount represented both the arrearage of child support, which was calculated from the time of the first reduced payments in 1966 until February 23, 1978, the date of the hearing, and $2,120.75 in interest. The wife's prayer for attorney's fees was denied. Thereafter the husband filed a petition for reduction of child support. After a hearing the

court entered an order that after August 28, 1978, the husband pay $25 per week for the support of the remaining unemancipated child. The husband also appealed from the April 20, 1978, judgment for back child support and interest. On appeal in the appellate court, defendant claimed that the trial court's order to pay child-support arrearage was improper under section 510(c) of the Illinois Marriage and Dissolution of Marriage Act, which provides in part:

> "Unless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child, except as otherwise provided herein, but not by the death of a parent obligated to support the child." (Ill. Rev. Stat. 1977, ch. 40, par. 510(c).)

A majority of the appellate court held that section 510(c) applied to the arrearage that accumulated subsequent to October 1, 1977, the effective date of the new act. The court held that the obligation to make support payments for emancipated children automatically abated under the new act and the defendant was not liable for the support payments for the three emancipated children that had accumulated after October 1, 1977. The appellate court reversed the circuit court of Marion County as to that part of the judgment.

As to those payments due prior to the effective date of the Act, the appellate court found the case of *Doty v. Doty* (1977), 45 Ill. App. 3d 213, to be controlling and affirmed the trial court's order to pay. The court rejected defendant's arguments that the wife was equitably estopped from bringing the suit and that her claim was barred by *laches*. Finally, the court found that the trial court did not abuse its discretion in awarding interest on the arrearage. The court remanded the cause to the trial court, however, for a recomputation of the interest based on the appellate court's ruling that the defendant was not

liable for support for his emancipated children after October 1, 1977. Also, the court ordered that, pursuant to section 508(a)(3) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 508(a)(3)), the wife was entitled to attorney's fees incurred in the defense of the appeal. 75 Ill. App. 3d 89.

The question, of unilateral *pro rata* reduction of support orders has been the subject of considerable litigation in our appellate courts. Although one appellate court has held it to be permissible to reduce, without court order, a portion of the support payment upon emancipation (*Snip v. Snip* (1962), 35 Ill. App. 2d 427), the appellate courts of this State have generally held to the contrary (*Storm v. Storm* (1973), 9 Ill. App. 3d 1071; *Voss v. Voss* (1974), 23 Ill. App. 3d 312; *Venegas v. Venegas* (1977), 46 Ill. App. 3d 998, 1001; *Baker v. Baker* (1977), 53 Ill. App. 3d 186, 191-92; *Doty v. Doty* (1977), 45 Ill. App. 3d 213; *Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 20; *Westerberg v. Stephens* (1979), 76 Ill. App. 3d 119, 122-23). These cases were decided under the law as it was settled prior to the enactment of the Illinois Marriage and Dissolution of Marriage Act and do not, of course, reflect the effect of section 510(c) of that act.

The parties do not contest the validity of section 510(c) of the new act. That section has recently been upheld by this court. (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563.) We need only determine whether the provisions of that section permit an obligor-parent to proportionately reduce, without leave of court, the amount of support paid upon the emancipation of a child under a decree for the support of more than one child; that is, did section 510(c) change the law as established by the above decisions of our appellate courts.

During the last term of court, we had occasion to construe certain provisions of the new act. (*In re Marriage of Lentz* (1980), 79 Ill. 2d 400.) In an attempt to ascertain legislative intent, we looked to applicable provisions of the

1970 Uniform Marriage and Divorce Act for guidance. (See also *In re Custody of Harne* (1979), 77 Ill. 2d 414.) In the case now before us, we note that section 510(c) of our act is nearly identical to section 316(c) of the uniform act (1970 Uniform Marriage and Divorce Act sec. 316(c)), which provides:

"Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child but not by the death of a parent obligated to support the child."

It is apparent from a reading of the section that, unless otherwise agreed or provided in the decree, the obligation to support a child terminates upon the emancipation of the child. The section also provides that absent such an agreement or provision, the parent's obligation to support does not terminate upon the death of that parent. The purpose of the first part of this provision is not to release the parent from the duty to support an emancipated child; such a duty does not ordinarily exist. Rather, the section's focus is on allowing parents to agree, or the decree to provide, that parents be liable for support subsequent to the emancipation of the child. The commissioner's note following section 316(c) of the uniform act supports this interpretation:

"Subsection (c) is designed to permit the parties to agree in writing or the court to provide in the decree that the obligation of each parent to support the child will extend beyond the child's emancipation and to permit parents, on occasion of a legal separation or dissolution of marriage, to agree that the child support provisions of the decree will terminate upon the death of a parent who has provided for the child in his will. In the absence of such an agreement or provision in the decree, this section terminates the obligation of a parent to support a child, only upon the child's emancipation ***." Uniform Marriage and Divorce Act sec. 316(c), Commissioner's Note, at 184-85 (1979).

Prior to the adoption of the new act, our appellate courts have held that a parent's obligation to support a minor child did not extend beyond the age of minority unless otherwise provided in the decree or as authorized by statute. (See *e.g., Prenzler v. Prenzler* (1977), 55 Ill. App. 3d 244, 246-47. But see Comment, *Parent and Child—Divorce Decree May Be Modified to Provide Support Beyond Child's Minority. (Illinois)*, 1957 U. Ill. L.F. 668, 671-72.) We agree with the appellate court opinion of *In re Marriage of Raski* (1978), 64 Ill. App. 3d 629, wherein the court found that the provisions of the new act do not extend the parental obligation for support beyond minority except in limited statutory situations. (See, *e.g.,* Ill. Rev. Stat. 1977, ch. 40, par. 513.) In light of the commissioner's interpretation of the nearly identical provision of the uniform act (1970 Uniform Marriage and Divorce Act sec. 316(c)), and consonant with the law prior to the adoption of the new act, we find that the legislative purpose behind section 510(c) is to permit the parties to agree to remain liable for the support of the child beyond emancipation. The plain language of section 510(c) states that provisions for child support are terminated by the child's emancipation, unless otherwise agreed in writing or by court order. Where the intention of the legislature is clearly expressed, the plain meaning of the statute must be given effect. (*Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 554.) Thus, it was not the purpose of section 510(c) of the new act to change the law with regard to unilateral *pro rata* reduction of lump-sum periodic support payments. The statement in that section that the provisions for the support of a child are terminated by emancipation is simply declarative of the common law rule that the obligation to support terminates upon emancipation. Since section 510(c) does not modify the common law, we need not distinguish between the liability for support payments due before and after October 1,

1977, the effective date of the new act; our holding will apply equally to both.

The above analysis of the effect of section 510(c) does not resolve the principal issue in this case; that is, Where the support order specifies one lump-sum amount to be paid periodically as support for more than one child and does not specify the amount of support for each child, can a parent voluntarily assume that such sum is to be divided equally among the children? In addition to our appellate court cases cited above, several other jurisdictions have considered this issue. (See generally Comment, *Domestic Relations: Kansas Adopts Automatic Reduction of Child Support*, 19 Washburn L.J. 175 (1979); R. Washburn, *Post-Majority Support: Oh Dad, Poor Dad*, 44 Temp. L.Q. 319, 332-33 (1971); 24 Am. Jur. 2d *Divorce and Separation* sec. 854 (1966); Annot., 2 A.L.R.3d 596 (1965).) There are a few courts, including our appellate court in the *Snip* case, which have held that a parent is automatically relieved of paying a portion of such lump-sum-support periodic award where one of the children becomes ineligible for support. (*Brady v. Brady* (1979), 225 Kan. 485, 592 P.2d 865; *Snip v. Snip* (1962), 35 Ill. App. 2d 427; *Ditmar v. Ditmar* (1956), 48 Wash. 2d 373, 293 P.2d 759. See also *Codorniz v. Codorniz* (1950), 34 Cal. 2d 811, 215 P.2d 32.) The vast majority of courts, however, hold, as did our appellate court in *Storm* and its progeny cited above, that a single amount to be paid periodically for the support of more than one child is not subject to an automatic *pro rata* reduction. These courts require that the entire sum be paid until the yougest child attains majority, or until the decree is otherwise prospectively modified by a court order. (See, e.g., *Becker v. Becker* (1978), 39 Md. App. 630, 387 A.2d 317; *Parsley v. Parsley* (Mo. App. 1978), 563 S.W.2d 146; *Halcomb v. Halcomb* (La. 1977), 352 So. 2d 1013; *Redman v. Redman* (Wyo. 1974), 521 P.2d 584; *Rhodes*

*v. Gilpin* (D.C. 1970), 264 A.2d 497; *Delevett v. Delevett* (1968), 156 Conn. 1, 238 A.2d 402; *Spivey v. Furtado* (1966), 242 Cal. App. 2d 259, 51 Cal. Reptr. 362; *Cosgriff v. Cosgriff* (N.D. 1964), 126 N.W.2d 131; *Beaird v. Beaird* (Tex. Civ. App. 1964), 380 S.W. 2d 730; *Jerry v. Jerry* (1962), 235 Ark. 589, 361 S.W.2d 92: *Taylor v. Taylor* (1961), 147 Colo. 140, 362 P.2d 1027; *Cooper v. Matheny* (1960), 220 Or. 390, 349 P.2d 812; *Schrader v. Schrader* (1947), 148 Neb. 162, 26 N.W.2d 617; *Estes v. Estes* (1941), 192 Ga. 100, 14 S.E.2d 680. See also 2 W. Nelson, Divorce and Annulment sec. 14.91, at 127-28 (2d ed.1961).) The rationale of these cases and of our appellate court decisions as stated below is equally persuasive in determining the effect of our new act upon the right to unilaterally reduce *pro rata* lump-sum periodic support payments.

Some of the cases reason that a support order is entered upon a consideration of several factors, which include the financial needs of the children and the resources of the noncustodial parent (Ill. Rev. Stat. 1977, ch. 40, pars. 505(1), (5)). Since the ability of the parent to pay is a factor under consideration, the amount awarded may not adequately provide for the needs of the children. Thus, as the number of children to benefit under the award decreases, the original award may more accurately come to reflect the needs of the remaining children. Accord, *Gordon v. Ary* (Mo. App. 1962), 358 S.W.2d 81, 83; *Delevett v. Delevett* (1968), 156 Conn. 1, 238 A.2d 402.

Also, as stated in some cases, a further factor to be considered in the award of child support is that of the physical, emotional and educational needs of the individual child (Ill. Rev. Stat. 1977, ch. 40, par. 505(4)). To allow the obligor-parent to equally divide the support among the children would be in dereliction of the legislative guideline set forth for the determination of the

proper amount to be paid as child support. (Accord, *Cooper v. Matheny* (1960), 220 Or. 390, 349 P.2d 812; *Becker v. Becker* (1978), 39 Md. App. 630, 387 A.2d 317.) Furthermore, the unilateral reduction of child-support payments constitutes a modification of the support order. The modification of such payments is solely a judicial function which is to be administered only by the court and in its discretion. (See *Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 20.) It is the function of the court to determine whether there should be a *pro rata* reduction in lump-sum periodic support payments when one of several children is emancipated, or whether other equitable considerations require that the reduction be a lower amount, or in fact whether there should be any reduction in the payments. Automatic reduction in support payments in a case such as the one before us constitutes an infringement upon the discretionary powers of the court to modify an award. (See *Jerry v. Jerry* (1962), 235 Ark. 589, 361 S.W.2d 92.) The responsible parent should petition the court for a judicial determination of the amount the support payments should be reduced due to changed circumstances. (See Ill. Rev. Stat. 1977, ch. 40, par. 510(a).) In view of the foregoing, we hold that the unilateral *pro rata* reduction of lump-sum periodic support payments for the benefit of more than one child upon the emancipation of a child is impermissible under the new act, as well as under the common law.

The defendant argues that the application of certain equitable principles would bar his wife from obtaining a judgment for unpaid amounts. He initially claims that her failure to institute the action earlier constitutes *laches*. (See generally Annot., 70 A.L.R.2d 1250 (1960).) *Laches* will operate to bar equitable relief where the failure to assert a right, along with a lapse of time and other circumstances, causes prejudice to the adverse party. (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 552; *Gill v. Gill* (1973),

56 Ill. 2d 139, 144-45.) The trial court in this case specifically found that the evidence did not establish the necessary elements of *laches* so as to bar the recovery of the amount owed on the support order. The appellate court, in affirming that conclusion, following *Doty v. Doty* (1977), 45 Ill. App. 3d 213, *Baldwin v. Baldwin* (1974), 21 Ill. App. 3d 380, and *Atwater v. Atwater* (1974), 18 Ill. App. 3d 202, held that a spouse is not injured because he is forced to pay the accumulated support in one lump sum as opposed to weekly payments as ordered. We agree with the holdings in these cases and find that the defendant has failed to establish a necessary element of *laches,* that he has been injured by the delay. (See also *Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 22. Contra, *Wolfe v. Wolfe* (1940), 303 Ill. App. 188.) *Laches* is an equitable doctrine to be invoked or rejected in the trial court's discretion. (See *Beckham v. Tate* (1978), 61 Ill. App. 3d 765, 768.) Having found no abuse of this discretion by the trial court we reject defendant's argument concerning the *laches* defense.

Defendant also asserts that his wife should be equitably estopped from pursuing this claim. This court set forth the definition of equitable estoppel in *Dill v. Widman* (1952), 413 Ill. 448. It is clear from that case that an essential element of estoppel is reliance. The trial court in our case correctly determined that defendant's failure to pay the full amount was not due to any act or omission by his wife; rather, he did not comply with the provisions of the support decree because he believed that he was no longer liable for the amount specified in the decree and could therefore unilaterally reduce the payment. Inasmuch as he failed to establish that he relied on the acts or omissions of his wife, she is not equitably estopped from bringing this suit.

We likewise reject defendant's assertion that a new agreement for support was entered into between the

parties. There was no evidence adduced at trial of an express agreement to reduce the support payments as each child was emancipated. Nor are we willing to infer the existence of an implied agreement. Such a finding was within the discretion of the trial court, which failed to find the existence of an implied agreement. We will not invade the province of the trial court on review unless there exists a clear abuse of discretion. Since the defendant failed to establish equitable defenses sufficient to bar this action, we affirm the trial court's determination of arrearage due.

Defendant also contends that the allowance of interest on a judgment is within the sound discretion of the court. Plaintiff argues that the periodic payments ordered by the court are money decrees and that, under the provision of section 3 of the interest statute (Ill. Rev. Stat. 1977, ch. 74, par. 3), interest is payable on each installment after its due date. It is plaintiff's contention that, under the statute, interest is not discretionary. Each party's position is supported by a line of appellate court authority. Those cases wherein the allowance of interest was held to be within the sound discretion of the divorce court include *Sutton v. Leib* (7th Cir. 1952), 199 F.2d 163 (applying Illinois law), *Matzen v. Matzen* (1979), 69 Ill. App. 3d 69, *In re Estate of Neirinck* (1978), 62 Ill. App. 3d 189, *Atwater v. Atwater* (1974), 18 Ill. App. 3d 202, and *Anderson v. Anderson* (1964), 48 Ill. App. 2d 140. Other decisions hold that a divorce decree is a money decree which draws interest until satisfied. *Ellingwood v. Ellingwood* (1975), 25 Ill. App. 3d 587; *Neeland v. Neeland* (1974), 17 Ill. App. 3d 803; *Gregory v. Gregory* (1964), 52 Ill. App. 2d 262; *Shuff v. Fulte* (1951), 344 Ill. App. 157; *Wadler v. Wadler* (1945), 325 Ill. App. 83.

Plaintiff relies principally on the case of *Ellingwood v. Ellingwood* (1975), 25 Ill. App. 3d 587. In that case, the appellate court construed the case of *Pope v. Pope* (1954),

2 Ill. 2d 152, as standing for the proposition that the equity court lacks authority to determine whether an award of interest is appropriate and, instead, is bound to assess interest against each individual payment as it becomes due. We do not agree. In *Pope,* the trial court refused to allow interest on the accrued alimony payments due under the divorce decree since it did not order immediate payment of a lump sum. In reversing the trial court, this court held that "interest at the legal rate *could* be recovered on the payments from the date they fell due." (Emphasis added.) (*Pope v. Pope* (1954), 2 Ill. 2d 152, 160.) Therefore, in *Pope* we merely held that interest could be assessed against periodic payments; it was not necessary that there be a judgment for a single sum for the assessment of interest.

This court has held that a divorce proceeding partakes so much of the nature of a chancery proceeding that it must be governed to a great extent by the rules that are applicable thereto. (*Bremer v. Bremer* (1954), 4 Ill. 2d 190, 192.) In a chancery proceeding, the allowance of interest lies within the sound discretion of the trial judge and is allowed where warranted by equitable considerations and is disallowed if such an award would not comport with justice and equity. (*Galler v. Galler* (1975), 61 Ill. 2d 464, 474; *Groome v. Freyn Engineering Co.* (1940), 374 Ill. 113, 131; *Duncan v. Dazey* (1925), 318 Ill. 500, 527; *McKey v. McCoid* (1921), 298 Ill. 566, 572.) As stated in *Groome,* "In a proper case, equitable considerations permit a court of equity to allow or disallow interest as the equities of the case may demand." (374 Ill. 113, 131.) We therefore conclude that the allowance of interest on past-due periodic support payments is not mandatory as contended by the plaintiff, but lies within the sound discretion of the trial judge, whose determination will not be set aside absent an abuse of that discretion.

After an examination of the record in this case we cannot say that the allowance of interest by the trial judge constituted an abuse of discretion. For well over 10 years, plaintiff was deprived of money for child support which was rightfully hers. For this same length of time, defendant enjoyed the use of the money. For this reason alone, the trial court could have determined that an award of interest was appropriate. Since we have determined that defendant is liable for all payments of support as well as for interest calculated thereon, it will be necessary to remand the cause to the trial court for a recomputation of interest. The calculation must be based on support payments due from the date of the first reduction to August 28, 1978, the date the payments were changed by court order.

We now turn to the final issue on appeal: whether the appellate court erroneously awarded legal fees incurred by plaintiff in the defense of this appeal. This question is governed by the new act. Section 508 provides:

> "(a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse, which award shall be made in connection with the following:
>
> ***
>
> (3) The defense of an appeal of any order or judgment under this Act, including the defense of appeals of post-judgment orders." (Ill. Rev. Stat. 1977, ch. 40, par. 508(a)(3).)

The trial court had denied plaintiff's request for attorney's fees at the trial court level. After the defendant filed his notice of appeal the plaintiff filed a petition in the trial court for the allowance of attorney's fees to defend the appeal. The record does not show that the trial court ruled on this petition. The plaintiff filed another

petition for attorney's fees to defend the appeal in the appellate court and the defendant filed objections thereto. The appellate court took the petition and objections with the case and in the opinion granted the petition and ordered the payment of reasonable fees which directly pertain to the defense of the appeal. Although there is nothing in the record to show the information on which the appellate court made its decision to allow fees, the plaintiff's brief indicates that this decision was based upon the petition of the plaintiff, the objections of the defendant, and the record that had been made in the trial court. The plaintiff contends that this procedure satisfied the notice and hearing requirement of section 508(a). It should be remembered that following the hearing and after considering the financial resources of the parties as required by section 508(a), the trial court had denied the plaintiff's petition for attorney's fees at the trial level. Since this was a factual determination made by the trial court following an evidentiary hearing it would appear that the same evidence which was insufficient to support the allowance of attorney's fees at the trial level would not be sufficient to support an award of attorney's fees for the defense of the appeal. We, therefore, conclude that the appellate court's order that the defendant pay plaintiff's attorney's fees for the defense of the appeal was not appropriate.

In summation, we have held that a parent may not reduce, *pro rata,* the amount of support upon the emancipation of a child under a decree for the support of more than one child. We have rejected defendant's equitable defenses, upheld the interest award as ordered by the trial court, and reversed the attorney's fees award as ordered by the appellate court. We affirm the decision of the circuit court except as to the amount of the money judgment entered. We vacate the money judgment and remand the cause to the circuit court of Marion County

to compute the amount of arrearage child support under the original decree to the date of August 28, 1978, the date said decree was modified. After August 28, 1978, the arrearage will be computed on the basis of the modified order from the date of said order to the date of said judgment, unless later modifications have been made. Interest is to be computed on the total amount to the date the judgment of the circuit court shall be entered.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and vacated in part; cause remanded, with directions.*