# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*In re Marriage of Rice*, **2011 IL App (1st) 103753**

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF MADONNA RICE, Petitioner-Appellee, and DANIEL RICE, Respondent-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-10-3753 |
| Opinion filed | December 9, 2011 |
| Rehearing denied | January 18, 2012 |
| Modified opinion filed | January 20, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from a trial court's postjudgment orders in dissolution proceedings, the trial court's modification of respondent's child support obligation by setting a lump-sum obligation rendered inapplicable the reduction provision of the parties' marital settlement agreement reducing respondent's obligation by 24% as each child became emancipated and his support obligation was set at $700 per month until his youngest child was emancipated and mandatory interest accrued on his delinquent child support beginning on April 23, 1991, the most recent date in which an arrearage was calculated by the court. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 82-D-9896; the Hon. David Haracz, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Nichole M. Capraro, of Stewart & Capraro, of Oak Park, and Daniel J.
Rice, of Forest Park, for appellant.

Marie I. Murphy, of Des Plaines, for appellee.

Panel

PRESIDING JUSTICE R. GORDON delivered the judgment of the court,
with opinion.

Justices Garcia and Lampkin concurred in the judgment and opinion.

## OPINION

¶ 1     This case concerns the amount of past-due child support that is owed by respondent Daniel Rice to his former wife, petitioner Madonna Rice. The parties divorced in 1982 and entered into a marital settlement agreement concerning the amount of child support Daniel would be required to pay, which was incorporated into the judgment for dissolution of marriage; the agreement included a provision that as each of the couple's four minor children emancipated, the support obligation would decrease by "one quarter" (the reduction provision). In 1990, the postjudgment court entered an order for "temporary support," modifying the amount of child support Daniel was to pay, and the order did not mention the reduction provision. By 2009, all four of the parties' children were emancipated, and Daniel was in arrears approximately $40,000, including interest that began accruing in 2006. However, at Madonna's request, the interest calculation was changed to reflect interest accruing beginning in 1991, resulting in a revised arrearage amount of approximately $80,000. Daniel filed a petition for clarification of his child support obligations and the arrearage amount. The trial court found that the reduction provision did not control the amount of child support owed and that the larger interest calculation was correct. The court denied Daniel's motion to reconsider and Daniel appeals, arguing that: (1) the 1990 court order modifying Daniel's child support obligation had no effect on the reduction provision, (2) the reduction provision was not against public policy and that argument should be barred by *laches*, (3) the 1990 court order was within the guidelines of the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act) (750 ILCS 5/101 *et seq.* (West 2008)), and (4) the Illinois Department of Healthcare and Family Services cannot assess interest for sums owed prior to January 1, 2000, since that is within the discretion of the trial court. We affirm.

¶ 2                                     BACKGROUND

¶ 3     The parties were married in 1972 and four children were born during the course of their marriage. On May 24, 1982, Madonna filed a petition for dissolution of marriage. At the time of the filing of the petition, Madonna was a housewife and Daniel was an attorney in private practice as a solo attorney. Madonna requested custody of the parties' children.

¶ 4	On March 31, 1983, the trial court entered a judgment for dissolution of marriage. Incorporated into the judgment was a marital settlement agreement (the agreement) entered into by the parties. Article III of the agreement concerned the support of the parties' children. It stated that "the Husband shall pay to the Wife the sum of 42% of his net income as and for child support with a minimum of $312.50 per month per child" and further stated that the support payments were based on Daniel's represented "gross receipts of $86,000 in 1982." Article III also contained the reduction provision, which provided: "Husband's obligation for support shall be reduced by one-fourth as each child attains the age of 18, dies, marries or becomes emanicipated [*sic*], whichever event occurs earlier."

¶ 5	On March 31, 1983, the same day as the entry of the judgment for dissolution of marriage, the court also entered a family support memorandum of judgment. In that document, Daniel's net income was listed as $30,000 per year and his support payments were to be made payable to the clerk of the court at $1,250 per month. Additionally, the memorandum of judgment listed prospective dates of termination of support for each child, and stated that "as children cease to be eligible for support, support payments to clerk shall be reduced as follows," followed by a list indicating that the support payments would decrease by one quarter as each child ceased to be eligible for support.

¶ 6	In 1984, the legislature amended section 505 of the Marriage Act to add guidelines for calculating child support. See Ill. Rev. Stat. 1985, ch. 40, ¶ 505. In 1988, the legislature amended section 510 of the Marriage Act to allow those who received child support pursuant to an order entered before the effective date of the support guidelines and whose support payments were below those in the guidelines one opportunity to petition the court for a modification of the support order to increase the amount of child support to the amount specified under the guidelines. See Ill. Rev. Stat. 1987, ch. 40, ¶ 510 (as amended by Pub. Act 85-1001 (eff. July 1, 1988)).

¶ 7	On September 18, 1989, the State, on Madonna's behalf, filed a petition for rule to show cause for Daniel's failure to pay child support and for modification of the child support amount pursuant to the amendment in the statute. The petition claimed that Daniel was in arrears in the amount of $9,505 and also requested increased support in conformity with the guidelines of section 505 of the Marriage Act (Ill. Rev. Stat. 1987, ch. 40, ¶ 505).

¶ 8	On March 27, 1990, the parties came before the court on the issue of determining current support and arrears. The trial court entered an agreed "order for support" and "judgment order for arrearages." The order stated that "Respondent is self employed[,] income v[a]ries" and found that Daniel was in arrears $20,662. The court further ordered Daniel to pay $2,000 per month, $1,250 for current support and $750 to be applied to the arrears until it was paid in full; the order stated that "[u]npaid arrears bear interest." The order also stated that "[c]urrent support is based upon guidelines (Ill. Rev. Stat. 1985 Ch. 40 Par. 505)." The court continued the matter to June 19, 1990, noting that "Respondent is to remain current–if Respondent is not current by 6-19-90 contempt hearing will proceed."

¶ 9	On June 19, 1990, the parties again came before the court on the matter of "child support." The court ordered Daniel to make his June payment within the next seven days and continued the matter to October 16, 1990, for payment status. The order also stated that if

Daniel was not current on the next court date, a contempt hearing would occur. On October 16, 1990, the trial court found that Daniel was $23,412 in arrears and entered an order for a body attachment, noting that the matter was before it "on the return of a Rule to Show Cause" against Daniel and that Daniel had been ordered to appear on the rule but had failed to appear.

¶ 10    On October 23, 1990, the trial court held a hearing on Daniel's motion to vacate the body attachment and also considered the matter of "child support and[/]or arrearage." The trial court entered two orders, one vacating the body attachment order and one for "temporary[1] support and arrears." The court found that Daniel was $21,312 in arrears and entered a judgment against Daniel and in Madonna's favor in that amount. The court ordered Daniel to pay $750 per month, $700 of which was for current support and $50 for arrears until the arrearage was paid. The matter was continued to April 23, 1991, "to reconsider [the] arrears" payment.

¶ 11    On April 23, 1991, the court ordered Daniel to "make payment of $3,000.00 within 21 days toward the arrearage of $23,812 as of 4/30/91." Over the next two years, the case was continued a number of times, with Daniel periodically being ordered to make payments on his current and past-due support. The court removed the matter from its call on November 16, 1993.

¶ 12    On December 3, 1993, Daniel filed a *pro se* petition to reduce child support. The petition claimed that under the marital settlement agreement, support payments were to be reduced by 25% as each child reached the age of 18; the petition further stated that one of Daniel's children had reached the age of 18 and graduated from high school. The petition claimed that Daniel had been current in his payments of $700 per month, as required in the October 23, 1990, court order, as well as an additional $50 per month paid by agreement with the State's Attorney's office. Daniel requested that the court reduce the amount of current support he was required to pay by $175, which represented the 25% reduction, and apply that $175 per month toward the arrearage; in short, the total amount he was to pay would remain the same, but the funds would be allocated differently. The record does not contain a disposition of this *pro se* petition.[2]

¶ 13    The next document in the record is an order to withhold income for child support, dated April 27, 2001, and sent to "Danile Rice." The order stated that $200 per month was to be

_____

[1]The order was called an order for temporary support even though there was no subsequent order modifying the amount of child support. See 750 ILCS 5/501(d)(3) (West 2008) (a temporary order "terminates when the final judgment is entered"). The record also does not indicate that either party filed a petition to modify the support amount other than the petition that was filed on September 18, 1989. In his reply brief, Daniel claims that he filed a petition for modification on October 23, 1990, and that the order was issued after a "full hearing" held on the same day. However, the petition is not contained in the record on appeal and Madonna's brief claims that no petition or motion was ever filed.

[2]Madonna's brief states that no order was ever entered disposing of the petition and Daniel's reply brief states that he never requested a hearing on the petition.

-4-

deducted from Daniel's income; $50 of the amount was designated for past-due support, and $150 was allocated to delinquency totaling $21,175.[3]

¶ 14    On January 29, 2010, Daniel filed a petition to clarify child support obligations and determine arrearage. Daniel claimed that, pursuant to the marital settlement agreement and the October 23, 1990, order modifying the amount of child support payments, he was required to pay $700 per month until each of his children turned 18. He claimed that his first child turned 18 on November 23, 1993, at which time his monthly support obligation was reduced to $525 per month. His second child turned 18 on November 3, 1995, at which time Daniel's monthly support obligation was reduced to $393.75. Daniel's third child turned 18 on October 31, 1997, at which time his monthly support obligation was reduced to $295.91 per month. His youngest child turned 18 on September 20, 1999. Thus, Daniel claimed that as of October 1, 1999, he no longer had any current support obligations.

¶ 15    Daniel claimed that on April 18, 2007, the Illinois Department of Healthcare and Family Services (IDHFS) sent an order to withhold income for child support in which Daniel's monthly obligation for arrearages was listed at $140 per month until the total arrearage amount of $7,987 plus interest was paid in full. Daniel further claimed that on August 5, 2009, IDHFS sent him correspondence indicating that he had a total arrearage of $80,262.71 as of April 30, 2009, and he disputed the amount of arrearage and the amount due and owing for child support.

¶ 16    Daniel claimed that the state's Child Support Program tendered him a support calculation worksheet, in which it did not take into account the automatic reduction in support. Thus, Daniel requested that the child support and arrearage amounts be clarified in an order which took into account the marital settlement agreement and October 23, 1990, order.

¶ 17    The correspondence Daniel discussed in his petition was a letter dated August 5, 2009, from IDHFS to him where it stated that as of April 30, 2009, the amount of past-due support was $38,104.25, including $9,327.25 in interest; Madonna disagreed with the total figure, stating that she thought it should be more. When reviewing the support calculation, the coordinator informed Madonna that the arrearage amount included interest calculated beginning January 1, 2006. The letter indicated that "[i]t has been the [IDHFS Division of Child Support Enforcement's (DCSE)] practice to charge interest beginning January 1, 2006, unless a calculation will be used in Circuit Court or at the request of a custodial parent." Madonna requested that interest be charged beginning May 1, 1987, or April 23, 1991, which was the date that the circuit court found that Daniel owed $23,812. The letter indicated that "[a]s a result of Madonna Rice's request and the fact that this matter may be litigated in Circuit Court, DCSE will be utilizing the calculation[ ] which calculated interest beginning[ ] April 23, 1991." The total amount of Daniel's past-due support was thus $80,262.17 as of

---

[3]While the order does not specify the difference between past-due support and delinquency, the Income Withholding for Support Act defines delinquency as "any payment *** under an order for support which becomes due and remains unpaid after entry of the order for support." 750 ILCS 28/15(c) (West 2008). Thus, the "past-due" support was that support owed prior to the entry of the October 23, 1990, order of support, while the "delinquency" accrued after the entry of the order.

April 30, 2009.

¶ 18        On September 3, 2010, the trial court issued a written order concerning Daniel's petition for clarification. The court reviewed the terms of the judgment for dissolution of marriage, including that pursuant to article III of the marital settlement agreement, Daniel "was grossing $86,000 per year at the time." The court found that Daniel's child support obligation was modified on October 23, 1990, and that at no time after that order did Daniel file a motion to modify the child support figure, including upon the emancipation of any of his children. The court found that Daniel's child support obligation continued to accrue at $700 per month from October 1990 through September 20, 1999. The court also found that at no time did Daniel ever remain current in his child support obligations and that, pursuant to the May 5, 2009, support calculation worksheet prepared by the State of Illinois Child Support Program, Daniel owed $80,262.17 in back child support and statutory interest.

¶ 19        The court rejected Daniel's contention that his child support obligation should have automatically been reduced 25% as each child became emancipated. The court noted that if that was the case, then support for Daniel's youngest child would have been $175 per month for approximately the last two months of the child's minority. The court found that "[c]learly, this level of child support would be a downward deviation from the statutory guidelines" and "[n]o finding of good cause was ever made by a court for such a deviation as required by 750 ILCS 5/505(a)(2)." The court further found that the October 23, 1990, order of support modified the relevant portions of article III of the marital settlement agreement, including the reduction provision.

¶ 20        Additionally, the court found that implementation of the reduction provision of the marital settlement agreement "is counter to public policy and is not enforceable." The court found that if Daniel wanted that provision to be applied, "he had an obligation to request the Court to modify the current support order, and if necessary, to make the express finding for allowing a deviation from the statute. [Daniel] never did this." The court held that the October 23, 1990, order of support remained in effect until the emancipation of the youngest child on September 20, 1999, and that the support calculation worksheet of May 5, 2009, "appears to be correct through that date," with statutory interest continuing to accrue. Accordingly, the court denied Daniel's request to apply the marital settlement agreement to recalculate the arrearage and ordered an account adjustment review to update the interest and total amounts Daniel owed.

¶ 21        On September 14, 2010, Daniel filed a motion to reconsider the trial court's September 3, 2010, ruling. Daniel claimed that the ruling "is based upon two findings that neither party directly addressed or considered," namely, the finding that the October 23, 1990, order "was not a guideline order," and the finding that the child support reduction provision was void as being against public policy. On December 15, 2010,[4] the trial court denied Daniel's motion to reconsider and found no just reason to delay enforcement or appeal. On the same day, Daniel filed a notice of appeal.

_____

[4]The order is not dated, but the record indicates that it was entered on December 15, 2010.

¶ 22                                ANALYSIS

¶ 23    On appeal, Daniel argues: (1) the October 23, 1990, court order modifying Daniel's child support obligation had no effect on the reduction provision, (2) the reduction provision was not against public policy and the public policy argument should be barred by *laches*, (3) the October 23, 1990, court order was within the guidelines of the Marriage Act, and (4) the IDHFS cannot assess interest for sums owed prior to January 1, 2000, since that is within the discretion of the trial court.

¶ 24                      I. Validity of Reduction Provision

¶ 25    The circuit court found that the reduction provision did not apply to Daniel's support obligation and gave three reasons for its conclusion: (1) the October 23, 1990, order modified the relevant support provisions of the marital settlement agreement; (2) if the reduction provision was applicable, the amount of support would have been below the guidelines imposed by the Marriage Act; and (3) the implementation of the reduction provision was against public policy because it permitted modification of the support obligation without court intervention. Daniel argues that none of the three rationales applies. First, he argues that the provision remained in effect despite the court's October 23, 1990, order modifying his child support obligation. Second, he argues that the reduction provision was not against public policy and that, if the issue had been raised by Madonna instead of by the trial court *sua sponte*, the argument should have been barred by *laches*. Finally, he argues that the October 23, 1990, court order was within the guidelines of the Marriage Act. We note that we owe no deference to the trial court's interpretation of the October 23, 1990, order, as it involves no factual findings but is a purely legal question, much like the interpretation of a statute or contract. See *Stojkovich v. Monadnock Building*, 281 Ill. App. 3d 733, 742 (1996) ("When an issue is decided as a matter of law, review of a trial court's decision on the matter is generally *de novo*.").

¶ 26                      A. *Effect of 1990 Order on Reduction Provision*

¶ 27    First, we consider whether the trial court's 1990 order for "temporary" support affected the reduction provision. In the case at bar, the trial court ordered Daniel to pay $700 per month for his support obligations but made no mention of the marital settlement agreement or the reduction provision. Daniel argues that the 1990 order only modified the amount of support and had no effect on the reduction provision, which continued to apply. We do not find Daniel's argument persuasive.

¶ 28    Daniel's initial support obligation, set forth in the agreement incorporated into the judgment for dissolution of marriage, provided that "the Husband shall pay to the Wife the sum of 42% of his net income as and for child support with a minimum of $312.50 per month per child" and further stated that "Husband's obligation for support shall be reduced by one-fourth as each child attains the age of 18, dies, marries or becomes emancipated [*sic*], whichever event occurs earlier." Thus, the terms of the agreement allocated the support obligation per child and provided a provision for reduction of the award as the children were emancipated that corresponded to the support allocated to each child.

-7-

¶ 29        However, the child support obligation was modified twice, and the modified support orders also modified the provisions of the marital settlement agreement concerning Daniel's support obligations. See 750 ILCS 5/502(f) (West 2008) ("[T]erms of an agreement set forth in the judgment are automatically modified by modification of the judgment."); see also 750 ILCS 5/502(b) (West 2008); *Blisset v. Blisset*, 123 Ill. 2d 161, 167 (1988) (the court is not bound by agreements providing for the support, custody, and visitation of children). After the 1984 amendment to the Marriage Act imposed child support guidelines, the trial court entered a support order pursuant to Madonna's petition setting Daniel's obligation as $1,250 per month for support. This order made no mention of allocating the support amount per child and stated that it was pursuant to the guidelines. The order also did not refer to the parties' marital settlement agreement. Similarly, the court's subsequent "temporary" order on October 23, 1990, set Daniel's child support obligation as $700 per month for current support. Like the earlier order, it did not allocate this amount among the parties' children or make any mention of the marital settlement agreement.

¶ 30        Daniel argues that the fact that the trial court's order was silent with regard to the reduction provision means that the provision remains in effect. We disagree. Daniel's argument relies on us finding that the October 23, 1990, order solely modified the dollar amount of his support obligation. However, examining that order, and the March 27, 1990, order preceding it, demonstrates that the trial court made more extensive modifications to the support obligation. First, as noted, the modifications make no mention of the reduction provision or the marital settlement agreement at all. Moreover, the modifications changed the character of the obligation from payments that were allocated among the children to an unallocated lump-sum support obligation. Thus, since the support orders made several important modifications to Daniel's support obligation, we cannot find that the trial court's silence on the reduction provision means that the provision remained in effect. Indeed, given the law concerning reduction of support payments in the case of an unallocated lump-sum support obligation, we find that the opposite result follows and the provision was no longer applicable.

¶ 31        In the case of an unallocated lump-sum support obligation, a party may not unilaterally reduce the amount of support paid and must petition the court for any modifications. In *Finley v. Finley*, 81 Ill. 2d 317, 329 (1980), the Illinois Supreme Court held that "the unilateral *pro rata* reduction of lump-sum periodic support payments for the benefit of more than one child upon the emancipation of a child is impermissible" both under the Marriage Act and under the common law. The court noted that a support order involves the consideration of a number of factors, including the noncustodial parent's ability to pay, so the amount awarded may not accurately provide for the needs of the children. *Finley*, 81 Ill. 2d at 328. Thus, as the children become emancipated and are no longer entitled to support, "the original award may more accurately come to reflect the needs of the remaining children." *Finley*, 81 Ill. 2d at 328. The court also stated that permitting one parent to equally divide the support among the children would be "in dereliction of the legislative guidelines" set forth in the Marriage Act and would infringe upon the court's power to modify an award of support. *Finley*, 81 Ill. 2d at 328-29. The court reasoned that "[i]t is the function of the court to determine whether there should be a *pro rata* reduction in lump-sum periodic

support payments when one of several children is emancipated, or whether other equitable considerations require that the reduction be a lower amount, or in fact whether there should be any reduction in the payments." *Finley*, 81 Ill. 2d at 329. Thus, the court held that such a reduction is impermissible and that the parent should petition the court to reduce the support obligation in light of changed circumstances. *Finley*, 81 Ill. 2d at 329.

¶ 32 Daniel argues that *Finley* does not apply because he was not attempting to make a unilateral *pro rata* reduction but was merely applying the provision agreed to by the parties in their marital settlement agreement. We do not find this argument persuasive. As noted, the support orders entered by the trial court modified Daniel's support obligations, including those provisions in the marital settlement agreement concerning child support. Daniel provides us no authority for the proposition that a reduction provision remains in effect when the trial court changes the character of the support obligation and is silent on the reduction provision's continued effect.

¶ 33 Furthermore, we find Daniel's reliance on *In re Marriage of Sweders*, 296 Ill. App. 3d 919 (1998), to be misplaced. In *Sweders*, the parties entered into a marital settlement agreement, incorporated into the judgment for dissolution of marriage, that included a provision requiring the husband to pay child support until each child's emancipation, which was defined as " '[t]he child's reaching majority or completing his education, whichever is later but not beyond age 22.' " (Emphasis omitted.) *Sweders*, 296 Ill. App. 3d at 920. The husband's support obligation was subsequently modified, and the support order stated that " 'all other terms of the Judgment for Dissolution of Marriage shall remain in full force and effect.' " *Sweders*, 296 Ill. App. 3d at 921. The husband was later awarded custody of the parties' youngest child, and the trial court ordered the wife to pay child support to the husband until the child reached age 22. *Sweders*, 296 Ill. App. 3d at 921. The appellate court upheld the trial court's order, finding that the agreement entered into by the parties defined the age at which the child became emancipated. *Sweders*, 296 Ill. App. 3d at 922.

¶ 34 Daniel analogizes his situation to that in *Sweders*, arguing that in both cases, the trial court was obligated to follow the terms of the marital settlement agreement. However, in *Sweders*, the trial court expressly noted in its order that the terms of the agreement would remain in effect despite the modification of support. See *Sweders*, 296 Ill. App. 3d at 921. By contrast, in the case at bar, the trial court was silent on the issue of the agreement. Thus, we do not find *Sweders* applicable to the situation at bar.

¶ 35 In the agreement, as noted, there was an allocation of the support obligation per child, with each child being allocated an equal share of the obligation, which corresponded to the 25% reduction as each child reached the age of majority. However, after the modifications of the support obligation, there was no longer an allocation of support but solely a lump-sum support obligation. It does not follow that the same *pro rata* reduction was agreed to by the parties in the absence of an allocation of the support obligation. If Daniel wished to reduce his child support obligation, whether by 25% or by any other amount, he was required to petition the court, at which point the trial court would determine whether Daniel was entitled

to a reduction in his support obligation. Since he did not do so,[5] the October 23, 1990, order remained in effect. Accordingly, we affirm the trial court's finding that the reduction provision did not apply and that Daniel's support obligation was based on a payment of $700 per month until his youngest child was emancipated.

¶ 36                              B. *Other Arguments*

¶ 37        Since we have found that the reduction provision did not apply to the October 23, 1990, order of support, there is no need for us to consider whether application of the provision violated public policy or comports with the Marriage Act child support guidelines. There is also no need for us to consider whether the public policy argument should have been barred by *laches*, since we affirm the trial court's decision not on the basis of its public policy argument but for the reason that the support orders modified the marital settlement agreement and the reduction provision no longer applied.

¶ 38                              II. Interest Calculation

¶ 39        Daniel also argues that the IDHFS improperly assessed interest beginning on April 23, 1991, and argues that interest on any arrearage should have been imposed beginning on January 1, 2000. Daniel agrees that he was required to pay interest beginning on January 1, 2000,[6] so his argument solely focuses on the time between April 23, 1991, and January 1, 2000.

¶ 40        Daniel argues that interest on child support prior to January 1, 2000, was discretionary and that, based on "equitable principles," interest should only accrue in his case beginning on January 1, 2000. We agree with Madonna that this issue has been resolved by the Illinois Supreme Court, which held that interest on delinquent child support payments became mandatory in 1987 in its recent decision in *Illinois Department of Healthcare & Family Services ex rel. Wiszowaty v. Wiszowaty*, 239 Ill. 2d 483 (2011).

¶ 41        In *Wiszowaty*, the court found that interest became mandatory upon passage of Public Act 85-2 (effective May 1, 1987), which amended the Marriage Act. In the public act, the legislature added the following provision to the Marriage Act:

---

[5]The record indicates that Daniel filed a petition for modification of his support obligation after his first child became emancipated. However, there is no disposition of that petition in the record and Daniel's brief indicates that he never sought hearing on the petition.

[6]Beginning on January 1, 2000, section 505(b) of the Marriage Act was amended to provide that "[a] support obligation, or any portion of a support obligation, which becomes due and remains unpaid for 30 days or more shall accrue interest at the rate of 9% per annum." 750 ILCS 5/505(b) (West 2000). The current language of section 505(b) provides that "[a] support obligation, or any portion of a support obligation, which becomes due and remains unpaid as of the end of each month, excluding the child support that was due for that month to the extent that it was not paid in that month, shall accrue simple interest as set forth in Section 12-109 of the Code of Civil Procedure." 750 ILCS 5/505(b) (West 2008).

"Any new or existing support order entered by the court under this Section shall be deemed to be a series of judgments against the person obligated to pay support thereunder, each such judgment to be in the amount of each payment or installment of support and each such judgment to be deemed entered as of the date of the corresponding payment or installment becomes due under the terms of the support order. Each such judgment shall have the full force, effect and attributes of any other judgment of this State, including the ability to be enforced." Ill. Rev. Stat. 1987, ch. 40, ¶ 505(c).

¶ 42    At the same time, the legislature also amended sections 12-109 and 2-1303 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, ¶¶ 12-109, 2-1303). Section 12-109 provided:

"Interest on judgments. Every judgment except those arising by operation of law from child support orders shall bear interest thereon as provided in Section 2-1303. Every judgment arising by operation of law from a child support order shall bear interest as provided in Section 2-1303 commencing 30 days from the effective date of each judgment." Ill. Rev. Stat. 1987, ch. 110, ¶ 12-109.

Section 2-1303 provided that "[j]udgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied." Ill. Rev. Stat. 1987, ch. 110, ¶ 2-1303.

¶ 43    The *Wiszowaty* court noted that the language in the amendments included the use of the word "shall," which was generally used to indicate a mandatory requirement. *Wiszowaty*, 239 Ill. 2d at 487. Accordingly, the court held that "under the plain and ordinary language of the foregoing statutory amendments, past-due child support payments began to bear mandatory interest on May 1, 1987." *Wiszowaty*, 239 Ill. 2d at 487-88.

¶ 44    Following the Illinois Supreme Court's decision in *Wiszowaty*, we agree with the circuit court and find that mandatory interest accrued on Daniel's delinquent child support beginning on April 23, 1991, the most recent date in which arrearage was calculated by the court.

¶ 45                                             CONCLUSION

¶ 46    We find that the support orders entered by the trial court in 1990 modified the parties' marital settlement agreement and that the agreement's reduction provision was not part of the modified support obligation. We further find that the circuit court properly assessed interest on Daniel's delinquent support payments beginning on April 23, 1991.

¶ 47    Affirmed.