NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190470-U

NO. 4-19-0470

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 20, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| JENNIFER L. DEMOSTHENES, | ) | Circuit Court of |
| Petitioner-Appellee, | ) | McLean County |
| and | ) | No. 14D516 |
| JEAN H. DEMOSTHENES, | ) | |
| Respondent-Appellant. | ) | Honorable |
| | ) | Pablo A. Eves, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Steigmann and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:    (1) The trial court abused its discretion in increasing child support upon the emancipation of one of the children using an imputed income for respondent when the court found no other change of circumstances had been proved to justify an increase.

(2) The trial court did not err in finding respondent in indirect civil contempt for his failure to pay certain amounts due.

¶ 2    In January 2017, the trial court entered a judgment of dissolution of marriage between petitioner, Jennifer L. Demosthenes, and respondent, Jean H. Demosthenes. The judgment incorporated a September 2015 stipulated parenting agreement, wherein respondent agreed to pay $1355 per month in child support for the parties' three children. However, the judgment noted respondent had filed a petition to modify his support obligation a week prior to the entry of the judgment, so the amount of support ordered was subject to the pending petition. Respondent's petition to modify alleged a substantial change of circumstances in that respondent was no longer

employed as of December 6, 2016. After an evidentiary hearing, the trial court denied respondent's motion on that basis but granted a modification based on the later emancipation of the oldest child. Nevertheless, the court recalculated child support using imputed income for respondent after the court found respondent's job loss was voluntary and he was underemployed. After the court's recalculation using imputed income, respondent's monthly child support obligation increased.

¶ 3    On appeal, respondent argues the trial court erred in (1) imputing income to respondent, (2) failing to consider petitioner's income, (3) failing to cap respondent's obligation for health insurance premiums at 5%, (4) ordering respondent to contribute to extra child-related expenses, (5) ordering respondent to contribute to a child's vehicle, (6) ordering an impossible purge amount, and (7) allowing for an automatic future finding of contempt without providing respondent with an opportunity to be heard. We reverse in part and affirm in part.

¶ 4                                I. BACKGROUND

¶ 5    In September 1995, the parties were married in McLean County. Three children were born during the marriage; E.D. in 1999, O.D. in 2001, and I.D. in 2004. In October 2014, petitioner filed a petition for dissolution of marriage. At that time, petitioner was 42 years old and was unemployed. Respondent was 42 years old and employed as a medical device salesman for C.R. Bard, Inc.

¶ 6    In March 2015, the trial court entered a temporary order, ordering respondent to pay petitioner 32% of his net income beginning January 1, 2015. The court ordered base support in the amount of $1271 per month plus 32% of any bonuses, commission, rental income, or income from any other source. Respondent was also ordered to contribute specific dollar amounts toward (1) expenses related to the marital home where petitioner and the children resided, (2) I.D.'s cell phone, and (3) marital debt. Respondent was also ordered to maintain the children's health

insurance, pay one half of uncovered medical expenses, and one half of the children's extra-curricular activities.

¶ 7    In September 2015, the parties entered into a stipulated parenting and child-support agreement, which addressed issues relating to the children's extra-curricular activities, health care, vehicle expenses, cell phone expenses, and college tuition. Respondent's child support obligation was $1355 per month based upon his base annual income of $71,400. Respondent was to pay petitioner 32% of any net income beyond his base salary.

¶ 8    In September 2016, petitioner filed (1) a motion to modify child support based on respondent's increase in income and increase in child-related expenses and (2) a petition for a rule to show cause seeking a finding of indirect civil contempt against respondent for his failure to pay certain child-related expenses. In response, in September 2016, respondent filed a petition to reduce child support, asking that the provisions regarding the reimbursement of certain child-related expenses be stricken or, in the alternative, to reduce his monthly obligation. Also, during this time, petitioner was granted an order of protection against respondent.

¶ 9    Before a ruling on the child-support-related motions was entered, on January 18, 2017, respondent filed a petition to modify child support, alleging he had lost his job and he was "unaware of his future sources of income." On January 19, 2017, petitioner filed an amended petition for a rule to show cause, seeking a finding of indirect civil contempt against respondent for his failure to pay child support and other child-related expenses.

¶ 10    On January 25, 2017, the trial court entered a judgment of dissolution of marriage, incorporating both the stipulated parenting and child-support agreement and the order directing the equitable distribution of assets. The final judgment acknowledged the existence of the pending motions to modify child support and made the incorporation of the agreement subject thereto.

¶ 11     The trial court conducted hearings on the pending motions on January 16, 2018, February 13, 2018, and May 21, 2018. The following evidence was presented.

¶ 12                              A. Respondent's Testimony

¶ 13     Respondent testified that, at the time he entered into the child-support agreement, he was working for Bard as a medical-device salesman earning a base salary of $71,000 and over $120,000 with commission. He had worked for Bard's predecessor company, Medtel, since 2009 and throughout Bard's acquisition in December 2013. In October 2016, for the first time, he was placed on a 90-day probationary period because he was not meeting his sales quota. His manager spoke with him numerous times before October 2016 about the company's expectations. After the probationary notice, he met with his director weekly about specific goals he needed to attain. Respondent attributed his failure to meet all of his goals due to "[t]he stress of court, the stress of being harassed by the police, [and] the stress of a lot of different things." He said his "motivation was just not where it needed to be." He tried his "hardest" but missing work affected his sales.

¶ 14     Respondent lost his job on December 6, 2016, and, as part of his separation agreement, was given a lump-sum severance pay of $14,407.40 plus his commission from the last quarter in the amount of $4917.85. He began receiving unemployment benefits in the net amount of $430 per week. Beginning in May 2017, child support was withheld from his unemployment benefits.

¶ 15     Respondent said he tried to obtain new employment by networking and working with approximately 10 recruiters. He regularly submitted job search affidavits with the trial court and the Department of Employment Security. Respondent said he searched for a job online all day, every day from 7 a.m. to 4 p.m. As a result of his search, he was granted only five interviews,

including interviews in Dallas, Chicago, St. Louis, and Florida. However, he could not recall the name of any of the five companies.

¶ 16        In November 2017, respondent began working as a salesperson at Lowe's Home Improvement in exterior products earning approximately $33,000 annually with a bi-weekly pay of $1273. He said Lowe's was a "great company," his position was a "good start for now," and he felt he had opportunities for future advancement. Beginning in February 2018, he received health-insurance benefits at a cost of $5392 per year for him and the children.

¶ 17        Due to this decrease in his income, respondent said he was no longer able to contribute to the extra expenses for the children. Per the property settlement agreement, petitioner was awarded a Dodge Journey, which was to be used as a vehicle for the children. The Journey was repossessed in August 2017 because respondent "assumed [petitioner] was going to do her part and make sure that the vehicle was financed under her name and the steps that are necessary." However, respondent acknowledged he was initially responsible for half of the expense. He advised the finance company to contact petitioner to have the loan refinanced into her name. He said he was "under the clear understanding that the vehicle was hers and she was to be responsible for taking over the payments and doing whatever she wants with it." Because the payments had not been made, the vehicle was repossessed. Petitioner asked respondent for $10,000 to purchase a Ford Fusion for his daughter, but he said he was not included in the decision and he did not think it was a good idea.

¶ 18        Respondent further testified that the rental properties he had been awarded were not generating income and still incurring expenses. He showed a loss of approximately $3171 per month. He said even if all rentals were occupied, it "would still be a challenge." He said his $950 net pay from Lowe's was reduced to $58 after the wage garnishment.

¶ 19                                    B. Petitioner's Testimony

¶ 20            Petitioner testified respondent had failed to pay certain extra-curricular, medical, and vehicle expenses related to the children. She said she had previously sent respondent the amounts with itemized bills due every month but he would insist he had not received it. She began forwarding the monthly amounts to her attorney, who then forwarded the same to respondent or his attorney. Respondent has not regularly paid the monthly amounts. Only when he was found in contempt of court in May 2017 did he pay. After that, he has not paid any further. After respondent lost his job, the children were without health insurance because respondent refused to continue with COBRA coverage. However, he did not advise petitioner. She discovered the lack of insurance when she took the children to the doctor.

¶ 21            Petitioner said she paid to respondent her half of the car payment on the Journey. He cashed her check but apparently did not make any payments to the auto financing company, which resulted in the repossession of the Journey. She was not aware of the loan default until the tow truck appeared at the house to repossess the vehicle in September 2017. Petitioner said she learned from her oldest daughter that respondent refused to pay for the vehicle when petitioner's boyfriend had access to it. Petitioner believed they had approximately $10,000 in equity in the Journey. With regard to the purchase of the Fusion, petitioner sent respondent four e-mails requesting his involvement. She received no response.

¶ 22            Petitioner said during her 22 years of marriage, respondent had no trouble meeting expectations at work. She also said she received income from her nonmarital farmland and as a substitute teacher.

¶ 23                                    C. Trial Court's Decision

¶ 24 After considering the evidence and arguments of counsel, the trial court took the matter under advisement and issued a written order on November 13, 2018. At issue before the court were respondent's original and amended petitions to modify his child support obligation and petitioner's original and amended petitions to modify child support. Also before the court were petitioner's multiple petitions for indirect civil contempt.

¶ 25 The trial court denied respondent relief on the grounds alleged in his original September 30, 2016, petition to modify child support. With regard to his January 18, 2017, petition to modify child support, the court denied respondent relief on the basis of him losing his job at Bard. The court questioned respondent's credibility. Respondent had testified he had failed to meet his sales quota due to his multiple court appearances. The court wrote in its order: "What [respondent] did not acknowledge was that much of that litigation resulted from his own actions and concluded with the entry of a Plenary Order of Protection against him." The court continued:

> "The court does not find respondent's testimony relating to losing his job at Bard to be particularly believable. The timing is very coincidental. Respondent, without admitting as much, all but conceded that he wasn't motivated to perform at Bard as he had been in the past. The court also didn't find it believable that this was involuntary. Rather, the court finds that the circumstances that contributed to respondent's loss of employment at Bard were respondent's own doing. In fact, ultimately, respondent's actions resulted in proof by a preponderance of the evidence for the issuance of a Plenary Order of Protection against him."

After imputing income, the trial court set child support at the increased amount of $1580 per month.

¶ 26    In his final pretrial memorandum of January 17, 2018, respondent alleged his oldest child had reached the age of majority and had graduated from high school. The court found this to be a substantial change in circumstances. The court wrote: "Modification of respondent's child support obligation is warranted on this basis."

¶ 27    The trial court's order continued: "[W]hile denying all other bases for modification of respondent's child support obligation, child support is modified downward to reflect that there are only [two] children remaining, and not [three], as of the date of the child's 18th birthday, graduation from high school, and including the month of June, 2017." The court also denied petitioner's motion to modify support on all bases.

¶ 28    The trial court further found respondent to be in indirect civil contempt for failure to pay expenses related to medical, vehicle, child support arrears, and extra-curricular activities. The court entered several judgments against respondent setting a timeframe for each to be paid as his potential purge conditions.

¶ 29    Respondent filed a motion to reconsider, alleging, *inter alia*, the trial court erred in imputing income, increasing child support while failing to consider petitioner's income, and finding him in contempt of court for nonpayment of certain expenses. After a hearing, the court denied respondent's motion to reconsider.

¶ 30    This appeal followed.

¶ 31                                II. ANALYSIS

¶ 32    As an initial matter, petitioner suggests this court dismiss this appeal or, in the alternative, strike respondent's brief for his failure to comply with Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) by not citing to the record in his argument. Rule 341(h)(7) provides that a party's argument in his brief "shall contain the contentions of the appellant and the reasons

- 8 -

therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). We agree with petitioner that respondent's brief does not comply with Rule 341(h)(7), as no citation to the record exists in his argument. However, we exercise our discretion in this matter and decline to dismiss the appeal or strike his brief on this ground. Despite respondent's deficiencies in his brief and because this court has thoroughly reviewed the record and, as a result, is familiar with the facts and the evidence contained therein, we will continue to resolve this case on its merits. See *Niewold v. Fry*, 306 Ill. App. 3d 735, 737 (1999).

¶ 33                                   A. Child Support

¶ 34        Respondent argues the trial court erred in calculating his modified child support obligation. We agree.

¶ 35        Section 510 of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) provides a child support order may be modified "upon a showing of a substantial change in circumstances." 750 ILCS 5/510(a)(1) (West 2016). "A substantial change in circumstances typically means that the child's needs, the obligor parent's ability to pay, or both have changed since the entry of the most recent support order." *In re Marriage of Verhines*, 2018 IL App (2d) 171034, ¶ 79. Accordingly, "[w]hen determining whether there is sufficient cause to modify, courts consider both the circumstances of the parents and the circumstances of the child." *In re Marriage of Lambdin*, 245 Ill. App. 3d 797, 806 (1993). "An increase in the child's needs can be presumed on the basis that the child has grown older and the cost of living has risen. This increase in the child's needs is balanced against the relative abilities of the parents to provide for those needs." *People ex rel. Stokely v. Goodenow*, 221 Ill. App. 3d 802, 805 (1991).

¶ 36        In its November 13, 2018, order, the trial court denied every ground for modification of child support from either party *except for* respondent's request made in his pretrial

- 9 -

memorandum. There, he sought a modification on the ground that his oldest child had attained the age of majority and had been emancipated. That is, the court denied petitioner's request to increase child support based on the allegations that (1) respondent's ability to support the children had increased and (2) the children's expenses had increased. Thus, with the court's denial, petitioner was not entitled to her requested relief.

¶ 37       The order also denied respondent's requests to decrease child support on the bases that (1) he lost his job at Bard, (2) his income had substantially decreased, and (3) he discovered that petitioner had substantial wealth and assets. The *only* "change of circumstances" the court found had occurred was the emancipation of the oldest child—an allegation brought to the court's attention by respondent in support of his request to lower child support.

¶ 38       "For a modification to occur, there must be a change in the child's needs, an increase in the father's income, or a change in the financial condition of the mother." *In re Marriage of Pettifer*, 304 Ill. App. 3d 326, 328 (1999). Here, the trial court specifically found none of these changes had occurred.

¶ 39       Indeed, modification of a support order is solely a judicial function. *Finley v. Finley*, 81 Ill. 2d 317, 329 (1980). The payor may not unilaterally make a *pro rata* deduction in payments upon the emancipation of a child. *Id.*

> "It is the function of the court to determine whether there should be a *pro rata* reduction in lump-sum periodic support payments when one of several children is emancipated, or whether other equitable considerations require that the reduction be a lower amount, or in fact whether there should be any reduction in the payments. Automatic reduction in support payments in a case such as the one before us constitutes an infringement upon the discretionary powers of the court to

modify an award. [Citation.] The responsible parent should petition the court for a judicial determination of the amount the support payments should be reduced due to changed circumstances. [Citation.] In view of the foregoing, we hold that the unilateral *pro rata* reduction of lump-sum periodic support payments for the benefit of more than one child upon the emancipation of a child is impermissible under the new act, as well as under the common law." *Id.*

¶ 40     Section 510(d) provides: "Unless otherwise provided in this [Dissolution] Act, or as agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child[.]" 750 ILCS 5/510(d) (West 2016). As the parties did here, each parent must file a petition independent of the other's petition if the relief they seek is different from the relief sought by the other. *In re Marriage of Zukausky*, 244 Ill. App. 3d 614, 619 (1993).

¶ 41     Petitioner's request to modify child support was denied in full. Respondent's request to modify child support was successful on the emancipation ground only. Although the trial court had jurisdiction in this case, its authority was limited to the relief sought in the pleadings. *Id.* at 618. It was error for the trial court to *increase* the amount of support after finding no grounds existed to support petitioner's allegations of an increase, yet finding grounds existed on respondent's request to *lower* child support.

¶ 42     We find the First District's decision in *In re Marriage of Ferraro*, 211 Ill. App. 3d 797 (1991) applicable here. There, the appellate court reversed the trial court's order denying the father's request to lower his child support obligation. *Id.* at 800. The father had filed a petition to modify support because allegedly (1) he had been laid off from his previous job, (2) he was unemployed, and (3) he had no income. He also alleged his oldest child had become emancipated.

*Id.* at 798-99. At the hearing on the father's petition, the trial court heard evidence that the father was, in fact, employed. Obviously disappointed in the father's misrepresentations, the trial court stated at the close of the hearing, it was lowering support only because of the emancipation. *Id.* at 799. Prior to the entry of this order, the court changed its mind and determined the father was not entitled to any relief. The court stated: "I am not going to reduce his support obligations at all. He has the burden of proving by a preponderance of the evidence that a substantial change in circumstances has occurred which would justify a diminution of his support obligations. I don't think he has met that burden." *Id.*

¶ 43    The father appealed, claiming the trial court had abused its discretion in denying his petition to modify. The appellate court agreed. *Ferraro*, 211 Ill. App. 3d at 799. Presumably, when a child reaches the age of majority, child support is terminated. However, this presumption can be rebutted by countervailing evidence that child support should remain unchanged based on:

> "(1) the financial resources of the children; (2) the financial resources and needs of the custodial parent; (3) the standard of living the children would have enjoyed had the marriage not been dissolved; (4) the physical, emotional, and educational needs of the children; and (5) the financial resources and need of the noncustodial parent or parents." *Id.* at 800

¶ 44    The First District found the trial court had abused its discretion in denying the father's petition to modify support when it was uncontroverted that his oldest child had reached the age of majority and the mother had not offered any countervailing evidence to justify keeping the current support amount in place. *Id.* The reviewing court remanded the case to the trial court to determine the amount the lump-sum support payment should be reduced. *Id.* That is,

"[u]nallocated child support is not necessarily reduced *pro rata* when a child becomes emancipated. [Citations.] It is a matter solely for judicial determination." *Id.*

¶ 45　　　Courts do not contemplate, nor would it make sense for, the support amount to increase upon a child's emancipation when there is no proof of countervailing evidence. Accordingly, the trial court here had no authority to impute income to respondent when calculating a *reduction* in his support obligation. Because the court found no bases upon which it could justify an *increase* of child support, there was no reason to impute income on respondent. In other words, according to the court, the petitioner failed to prove the existence of a substantial change in circumstances to support an increase in respondent's support obligation. Absent such countervailing evidence, the court had no authority to increase respondent's existing obligation and, therefore, no authority to impute income on respondent for such calculation.

¶ 46　　　For these reasons, we vacate the trial court's November 13, 2018, order as it relates to respondent's modified child-support obligation and remand for a calculation of the amount by which respondent's support obligation should be reduced, if at all, based upon the emancipation of the parties' oldest child.

¶ 47　　　The trial court should recalculate the apportionment of the cost of the children's health care after it has recalculated respondent's child-support obligation for two children. Additionally, the court may revisit the amount of respondent's contribution toward extra-curricular activities if that amount is dependent upon the court-ordered support amount. If so, the amount should be recalculated after the court has recalculated respondent's modified child-support obligation for two children. The court is also directed to recalculate any child-support arrearage amount affected by this court's order.

¶ 48　　　　　　　　　B. Indirect Civil Contempt

¶ 49 Respondent also challenges the trial court's order finding him in indirect civil contempt and ordering him to pay $5000 as his share of the lost equity in the Journey and $10,253 as his share for the cost of the Fusion. We find the evidence presented at trial supported the court's finding of contempt and the corresponding judgment amounts.

"Generally, civil contempt occurs when a party fails to do something ordered by the trial court, resulting in the loss of a benefit or advantage to the opposing party. [Citation.] Contempt that occurs outside of the presence of the trial court is classified as indirect contempt. [Citation.] The existence of an order of the trial court and proof of willful disobedience of that order are essential to any finding of indirect civil contempt. [Citation.] The burden initially falls on the petitioner to prove by a preponderance of the evidence that the alleged contemnor has violated a court order. [Citation.] The burden then shifts to the alleged contemnor to show that noncompliance with the court's order was not willful or contumacious and that he or she had a valid excuse for failure to follow the court order. [Citation.] Contumacious conduct consists of 'conduct calculated to embarrass, hinder, or obstruct a court in its administration of justice or lessening the authority and dignity of the court.' [Citation.] Whether a party is guilty of indirect civil contempt is a question for the trial court, and its decision will not be disturbed on appeal unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. [Citation.]" *In re Marriage of Charous*, 368 Ill. App. 3d 99, 107-08 (2006) (quoting *In re Marriage of Fuesting*, 228 Ill. App. 3d 339, 349 (1992).

¶ 50 The evidence presented at trial demonstrated petitioner was solely responsible for the loan on the Journey. Petitioner did not dispute this. However, the evidence also demonstrated

the loan was solely in respondent's name. Because the loan company would not discuss any ownership or financial transactions with petitioner, she was forced to rely (for a period of nine months) on respondent to either contact the loan company to effectuate a transfer, authorize permission for the company to deal directly with petitioner, or pay the loan after receiving payments from petitioner. Respondent did none of these things. However, respondent admitted receiving and cashing petitioner's checks intended as payment for the Journey. His inaction and willful disobedience deprived petitioner of the awarded asset after the vehicle was repossessed for nonpayment. Respondent's willful conduct obstructed and hindered petitioner's interest in the Journey.

¶ 51        With regard to the Fusion, petitioner testified she sent respondent numerous emails and requests for feedback during the purchasing process. Petitioner sought, but did not receive, respondent's input and assistance after requesting the same on September 13, 2017, September 25, 2017, October 10, 2017, and October 22, 2017. Petitioner moved forward with the purchase despite respondent's silence in order to replace the vehicle that had been repossessed. The September 4, 2015, parenting agreement specifically stated the parties would provide a vehicle for the children, each paying half. The agreement also required the parties must agree on the vehicle. Petitioner expended reasonable efforts to reach out to respondent for his input on the purchase to no avail. His silence can reasonably be interpreted as a willful disregard of the court's order. In fact, his testimony did not provide an explanation or a valid excuse as to why he did not respond.

¶ 52        For these reasons, based on our review of the record, we conclude the trial court's findings of indirect civil contempt were not against the manifest weight of the evidence.

¶ 53        Respondent also contends he is unable to pay the purge amounts set forth in the trial court's November 13, 2018, order. Indeed, any civil-contempt order must provide for an

opportunity for the contemnor to purge himself of contempt, and the purge amount must be based on the contemnor's ability to pay. *In re Marriage of Dunseth*, 260 Ill. App. 3d 816, 828 (1994). According to respondent, the trial court's order requires respondent to pay $6236.17 per month, including purge amounts, arrearages, expenses due, and child support. He claims this amount is impossible based upon his monthly income from Lowe's.

¶ 54       However, the trial court's order did not specify a monthly payment plan or dictate how the amounts should be paid. Respondent is free to pay the ordered amounts as he sees fit as long as the payments occur within the timeframe ordered. According to the record before us, respondent has more than sufficient assets to pay the amounts ordered.

¶ 55       Finally, respondent claims his procedural rights to due process are in jeopardy with the entry of the trial court's November 13, 2018, order. He claims the court's order

> "(1) authorizes a finding of contempt in the event that [he] fails to keep current on all of this [*sic*] child support obligations for the next two years, (2) grants leave to [petitioner]'s counsel to compute amounts due and owing, with those amounts to be used by the court to enter judgment against [respondent] on past due obligations, and (3) grants leave to [petitioner]'s counsel to present her affidavit for time spent in representing [petitioner] on contempt matters."

¶ 56       We find no such language in the trial court's November 13, 2018, order. The court found respondent in contempt of court for failing to pay various child-related expenses. The court stated in its order that respondent

> "[s]hall remain current on all child support obligations for a period of two (2) years from the date of this Order. *** If respondent fails to do so, and provide verification to the Court of said amount paid in full by November 13, 2020 at 9:00 AM, then

Respondent is ordered committed to the McLean County [j]ail, there to remain until Contemnor shall have purged himself of contempt by paying directly to petitioner the remaining amounts so owed, or until the Respondent is otherwise discharged by due process of law[.]"

¶ 57    The trial court did not order respondent to be held in contempt *if* he does not remain current on his support obligation. Instead, the court stated respondent could purge his contempt by remaining current on his support obligation for two years. If he did not satisfy his purge condition, as a sanction, he would have to report to jail. Indeed, "jailing" is the "most familiar example" of a sanction for a finding of civil contempt. See *In re Marriage of Betts*, 200 Ill. App. 3d 26, 44 (1990).

¶ 58    Respondent's remaining two concerns regarding the authority of petitioner's counsel are non-issues. Regardless of what calculations or computations petitioner's counsel presents to the trial court, respondent has the right to challenge those calculations with a filed response. The court's order provides that amounts due "are to be determined by the court[.]" Counsel was invited to promptly submit her totals to the court *prior to its determination*. We find no error in the court's order in this regard.

¶ 59                                    III. CONCLUSION

¶ 60    For the reasons stated, we vacate all portions of the trial court's order relying on the modified child-support amount. We remand with directions for the court to consider recalculating child support in light of the emancipation of the parties' oldest child. In all other respects, we affirm the court's order.

¶ 61    Affirmed in part; vacated in part and remanded.